UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

LOREDANA INGENITO,

                     Plaintiff,

              v.

RIRI USA, INC. and BENHAMIN HOWELL, II,

                     Defendants.

-----------------------------------------------------------------x

**MEMORANDUM & ORDER**

11-CV-2569 (MKB)

MARGO K. BRODIE, United States District Judge:

       Plaintiff Loredana Ingenito brought the above-captioned action against Riri USA, Inc.

("Riri USA") and Benjamin Howell, II, in the Supreme Court of the State of New York, County

of Queens.  Defendant removed the action to this Court on May 27, 2011.  The Complaint asserts

claims for pregnancy discrimination under both disparate impact and disparate treatment theories

pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Pregnancy

Act of 1978 ("PDA"); pregnancy discrimination pursuant to the New York State Human Rights

Law ("NYSHRL"), the American with Disabilities Act ("ADA"), the Genetic Information

Nondiscrimination Act ("GINA"), and the Family and Medical Leave Act of 1993 ("FMLA");

due process violations pursuant to the Due Process Clause of the U.S. Constitution; and

intentional infliction of emotional distress pursuant to New York state law.  Defendants moved

for summary judgment on all claims.  The Court heard oral argument on August 23, 2013.  At

oral argument, Plaintiff requested leave to amend the Complaint to add Riri SA ("Riri Group") as

a defendant.[1]  For the reasons set forth below, the Court grants Plaintiff's request to amend the

---

[1] At oral argument, Plaintiff withdrew her ADA, GINA, FMLA, due process, and
intentional infliction of emotional distress claims.  (Oral Arg. Tr. 26:19–29:4.)

Complaint to add Riri Group as a defendant. The Court grants Defendant Howell summary judgment on all of Plaintiff's Title VII claims and denies Defendant Howell summary judgment on Plaintiff's NYSHRL claim. The Court grants Defendant Riri USA summary judgment on Plaintiff's Title VII disparate impact claim and denies Defendant Riri USA summary judgment on Plaintiff's Title VII disparate treatment and NYSHRL claims.

## I.    Background

Plaintiff Loredana Ingenito worked for Defendant Riri USA from approximately August 4, 2004 until January 13, 2010, as an at-will employee in the New York office. (Def. 56.1 ¶¶ 1–2, 4.) Plaintiff began working at Riri USA as a receptionist. (*Id.* at ¶ 9.) She was promoted to customer service representative and then salesperson, which is also known as account executive, sales executive, and sales representative. (*Id.*) Plaintiff's duties included developing new business and maintaining current customer accounts. (*Id.* at ¶ 10.) During Plaintiff's tenure, the only other salesperson in the New York office was Anna Lenhoff, who was hired by Riri USA in 2006. (*Id.* at ¶ 11.)

Defendant Riri USA is a Delaware corporation with its primary place of business in New York. (*Id.* at ¶ 3.) Riri USA sells zippers, snaps, buttons, and rivets to high-end clothing manufactures. (*Id.* at ¶ 6.) At the time of Plaintiff's termination, Riri USA had three offices: one in New York with five employees, one in Los Angeles with one employee, and one in San Francisco with one employee. (*Id.* at ¶¶ 14–15, 71.) Defendants allege that "[f]rom the time [that] Riri USA hired plaintiff to the present, the Company has never had more than nine employees." (*Id.* at ¶ 20.) Defendant Howell is Riri USA's CEO. (*Id.* at ¶ 7.) He has held the position since he began working at the company eleven years ago. (*Id.*) Defendant Howell's responsibilities include hiring and firing employees. (*Id.* at ¶ 8.)

Riri USA is a wholly-owned subsidiary of Riri Group, a corporation organized under the laws of Switzerland with its principal place of business in Switzerland. (*Id.* at ¶ 5.) Defendants allege that in 2008 and 2009, Riri Group and Riri USA sales fell by approximately 35%. (*Id.* at ¶ 23.) As a result, Riri Group closed a factory and laid-off approximately 19% of its workforce. (*Id.*)

In late summer 2009, while five and a half months pregnant, Plaintiff had a miscarriage.[2] (Carr Aff. Ex. EEOC Compl.) This first pregnancy required Plaintiff to be on bed rest, and Plaintiff was absent from work for bereavement after the miscarriage. (*Id.*) Plaintiff alleges that she worked from home for part of this time. (*Id.*) While she was away from work, she "received a phone call from Ben Howell informing [her] that if [she] took any more days off after this he would begin to dock [her] pay." (*Id.*) Plaintiff claims she still had sufficient days off to cover the time. (*Id.*) She described the environment at her work place as hostile after her first pregnancy. (*Id.*)

---

[2] Defendants contend that because Plaintiff did not mention her first pregnancy in her Complaint and Plaintiff's counsel has represented that the lawsuit only concerns the second pregnancy, the Court should not consider Plaintiff's first pregnancy. (Def. Reply Br. 8–9.) The Court agrees that Plaintiff cannot now amend her Complaint to allege a new discrimination claim based on Plaintiff's first pregnancy. However, nothing precludes this Court from considering the facts in the record surrounding her first pregnancy when determining: (1) whether Defendant Howell had a general anti-pregnancy animus; and (2) whether the neutral reasons given by Defendants for Plaintiff's termination were pretext. *See, e.g.*, *Herbert v. City of New York*, 748 F. Supp. 2d 225, 238 (S.D.N.Y. 2010) ("[T]he necessary [discrimination] inference 'may be derived from a variety of circumstances,' including, but not limited [to] 'the sequence of events leading to the plaintiff's discharge.'" (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009))). Since Plaintiff need not plead the *McDonnell Douglas* burden shifting test in the Complaint, all the evidence supporting a finding of pretext need not necessarily be pled in the Complaint. *See Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 71 (2d Cir. 2006) ("[T]he requirements for establishing a prima facie case under *McDonnell Douglas* [do not] apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." (citing *Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002))).

Defendants allege that at the September 2009 Riri Group worldwide sales meeting, former Riri Group CEO, Andrea Cerni, told Defendant Howell that Riri USA would have to lay off at least one Riri USA employee. (Def. 56.1 ¶¶ 24–28.) Cerni and Defendant Howell decided that if a layoff had to be made, it would be Plaintiff. (*Id.* at ¶¶ 27–29, 35–39.) Defendants allege Plaintiff was chosen because she was the "weakest link," since Lenhoff sale's performance had steadily increased from 2006 to 2009 and Plaintiff's performance had declined. (*Id.*) Plaintiff disputes the contention that she was the poorest performer. (*Id.*)

During a November 30, 2009 sales meeting, it was announced that Lenhoff would go to a sales training in Italy instead of Plaintiff. (Carr Aff. Ex. EEOC Compl.) Plaintiff understood the decision to offer Lenhoff the training position instead of Plaintiff to be related to Plaintiff's desire to have a family. (Carr Aff. Ex. EEOC Compl.) Also, on November 30, 2009, Defendants allege that Cerni called Defendant Howell and told him that the layoff had to occur. (*Id.* at ¶ 41.) Plaintiff argues that it is a disputed fact whether or not the decision to terminate Plaintiff was made in Fall 2009 prior to Defendants learning of her pregnancy. (Pl. 56.1 ¶¶ 29–34.)

Plaintiff told Defendant Howell that she was pregnant in early December, either December 3, 2009, as Plaintiff recalls, or December 10, 2009, as Defendant Howell recalls. (Def. 56.1 ¶¶ 42–44; Pl. 56.1 ¶¶ 42–44, 107.) Plaintiff alleges that she waited until December 3, 2009 to tell Defendant Howell about her pregnancy because of what happened after her first pregnancy. (Carr Aff. Ex. EEOC Compl.) Defendant Howell told Cerni between December 10, 2009 and December 16, 2009 that Plaintiff was pregnant. (Def. 56.1 ¶ 46.)

On January 13, 2010, a meeting was held where Defendant Howell told Plaintiff that she was being terminated and given a separation agreement (the "Separation Agreement"). (Def. 56.1 ¶¶ 51, 53–56.) The Separation Agreement is officially dated January 13, 2010. However,

at the bottom of the Separation Agreement, there appears to be a document creation date of December 10, 2009. (Carr Aff. Ex. EEOC Compl, Ex. Separation Agreement.) Plaintiff alleges that, in the meeting, she was given no job related reasons for her termination and Defendant Howell told her "this was a good thing because now that [she] was pregnant [she] could go home, enjoy [her] pregnancy and relax." (Def. 56.1 ¶ 60; Pl. 56.1 ¶ 106; Carr Aff. Ex. EEOC Compl; Pl Dep at 38:7–9, 80:15–19, 164:16–24.) Plaintiff alleges that Mark Teel, Riri USA's Vice President of Sales, who was also present at the meeting, echoed Defendant Howell's statement. (Def. 56.1 ¶ 60; Pl Dep at 38:7–9, 80:15–19, 164:16–24.) Defendant Howell and Teel deny Plaintiff's allegation. (Def. 56.1 ¶ 61.) Plaintiff was the only employee fired in January 2010, and Plaintiff has not been replaced by a new hire. (Def. 56.1 ¶¶ 70, 74.)

Plaintiff alleges that after her termination and before she had signed the Separation Agreement, she was hospitalized with pregnancy related complications. (Carr Aff. Ex. EEOC Compl.) On February 1, 2010, Plaintiff's husband and her attorney called Defendant Howell to inform him that Plaintiff had been hospitalized due to pregnancy complications from January 29, 2010 to January 30, 2010 and to request more time to consider the Separation Agreement. (*Id.*; Pl. 56.1 ¶ 109.) Defendant Howell agreed to give Plaintiff a two week extension. (Carr Aff. Ex. EEOC Compl.) The Separation Agreement included insurance coverage through June 13, 2010. (Carr Aff. Ex. Separation Agreement; Pl. 56.1 ¶ 108.) Plaintiff contends that on February 8, 2010, she received a letter from Aetna stating that her insurance coverage had been denied because it was terminated prior to her entering the hospital. (Carr Aff. Ex. EEOC Compl.) When Plaintiff called Aetna, she was informed that Defendant Howell had called Aetna on February 2, 2010, the day after Plaintiff's husband and her attorney called Defendant Howell, to terminate her insurance coverage and that termination was back dated to January 27, 2010, two days prior to the date Plaintiff entered the hospital. (*Id.*; Pl. 56.1 ¶ 109.)

## II. Discussion

### a. Standard of Review

#### i. Motion to Amend the Complaint

Under Rule 15(a)(2) and Rule 21 of the Federal Rules of Civil Procedure, a district court may grant leave to amend a complaint to add a new party. Rule 15(a)(2) provides that courts "should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[U]nder Rule 21, courts should apply the same standard of liberality afforded to motions to amend pleadings under Rule 15." *Diggs v. Marikah*, No. 11-CV-6382, 2013 WL 227728, at *2 (S.D.N.Y. Jan. 22, 2013) (internal quotation marks omitted) (quoting *Bridgeport Music, Inc. v. Universal Music Grp., Inc.*, 248 F.R.D. 408, 412 (S.D.N.Y. 2008)). The Second Circuit has stated that "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011). "It is within the sound discretion of the district court to grant or deny leave to amend." *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 139 (2d Cir. 2011) (alterations omitted) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)); *see also In re Initial Pub. Offering Sec. Litig.*, 224 F.R.D. 550, 551 (S.D.N.Y. 2004) ("Whether to permit a plaintiff to amend her pleadings is a matter within the Court's 'sound discretion.' That discretion encompasses both whether to permit substantive amendments of plaintiffs' claims and allegations, as well as whether to permit the joinder of additional plaintiffs." (citations omitted)). Motions to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008). "An amendment to a pleading will be futile if a proposed claim could

not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002).

### ii. Summary Judgment Motion

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012); *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011). The role of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000). The Second Circuit has made clear that while summary judgment is available in discrimination cases where there are no genuine issues of material fact, "an extra measure of caution is merited" when considering summary judgment in discrimination cases because "direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." *Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006).

### b. Title VII

#### i. Riri USA can be held liable under Title VII

##### (a) RIRI USA is an employer under Title VII

Defendants argue that Riri USA is not an employer under Title VII because it never had more than nine employees during Plaintiff's tenure, and thus, Plaintiff cannot sustain a Title VII claim against Riri USA for employment discrimination.  (Def. Mem. 4–5.)  Plaintiff has requested that she be granted leave to amend the Complaint to add Riri Group as a defendant because under the single employer theory, Riri USA and Riri Group meet the threshold requirement.  (Oral Arg. Tr. 39:20–40:9.)  Defendants argue that amendment should not be granted because there is insufficient evidence that the single employer doctrine applies.  (Def. Reply 5–7.)  The Court finds that the single employer doctrine applies and grants Plaintiff's request to amend the Complaint to add Riri Group as a defendant.

Under Title VII, an employer is "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person."  42 U.S.C. § 2000e(b); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 503 (2006) ("In a provision defining 13 terms used in Title VII, 42 U.S.C. § 2000e, Congress limited the definition of 'employer' to include only those having 'fifteen or more employees . . . .'").  The number of employees a defendant has is a substantive element of a plaintiff's Title VII claim.  *Arbaugh*, 546 U.S. at 504 ("[T]he employee-numerosity requirement relates to the substantive adequacy of [plaintiff's claim].").  However, "[t]he definition of 'employer' has been construed liberally for Title VII purposes 'and does not require a direct employer/employee relationship.'"  *Lima v. Addeco*, 634 F. Supp. 2d 394, 399 (S.D.N.Y. 2009) (citations omitted).

A court may aggregate the employees of two entities under certain circumstances when it appears that a plaintiff's direct employer may not meet the fifteen-employee threshold minimum requirement. Courts have constructed two doctrines – single employer and joint employer – by which employees can be aggregated to achieve the fifteen employee requirement under Title VII. *Arculeo v. On-Site Sales & Mktg, LLC*, 425 F.3d 193, 198 (2d Cir. 2005); *Goodman v. Port Auth. of N.Y. & N.J.*, 850 F. Supp. 2d 363, 386 (S.D.N.Y. 2012); *Lima*, 634 F. Supp. 2d at 399. "A 'single employer' situation exists 'where two nominally separate entities are actually part of a single integrated enterprise . . . .'" *Arculeo*, 425 F.3d at 198 (alteration in original) (citations omitted).[3] Under the single employer doctrine, the number of employees under both enterprises can be aggregated to reach the statutory threshold. *Arculeo*, 425 F.3d at 198; *Dias v. Cmty. Action Project, Inc.*, No. 07-CV-5163, 2009 WL 595601, at *2 (E.D.N.Y. Mar. 6, 2009). The most common example of a "single employer" is a parent and a wholly owned subsidiary. *Arculeo*, 425 F.3d at 198 (2d Cir. 2005) ("[E]xamples [of single employer include] parent and wholly-owned subsidiary corporations . . . ."); *see also Lima*, 634 F. Supp. 2d at 399–400 ("Single integrated enterprises can include parent and wholly-owned subsidiary corporations or separate corporations that operate under common ownership and management."). "[T]he policy underlying the single employer doctrine is the fairness of imposing liability for labor infractions where two nominally independent entities do not act under an arm's length relationship." *Dias*, 2009 WL 595601, at *2 (quoting *Murray v. Miner*, 74 F.3d 402, 405 (2d Cir. 1996)).

---

[3] "In contrast to the single employer theory, joint employment 'assumes that [there] are separate legal entities, but that [the entities] handle certain aspects of their employer-employee relationship jointly.'" *Dias v. Cmty. Action Project, Inc.*, No. 07-CV-5163, 2009 WL 595601, at *3 (E.D.N.Y. Mar. 6, 2009) (alteration in original) (quoting *Arculeo v. On-Site Sales & Mktg, LLC*, 425 F.3d 193, 198 (2d Cir. 2005)). Under the joint employer theory, only the employees who are actually jointly employed can be aggregated for Title VII purposes. *Dias*, 2009 WL 595601, at *3.

Factors for determining whether a parent and subsidiary act as a single entity include: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Gulino v. N.Y. Educ. Dept.*, 460 F.3d 361, 378 (2d Cir. 2006) (citing *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1239 (2d Cir. 1995)); *see also Lima*, 634 F. Supp. 2d at 399–400 (discussing factors to be considered); *Dias*, 2009 WL 595601, at *2 (same). The critical question in single entity analysis is: "what entity made the final decision regarding employment matters related to the person claiming discrimination?" *Velez v. Novartis Pharm. Corp.*, 244 F.R.D. 243, 250 (S.D.N.Y. 2007); *see also Ayala v. Metro One Sec. Sys., Inc*., No. 11-CV-233, 2011 WL 1486559, at *4 (E.D.N.Y. Apr. 19, 2011) ("In determining whether multiple entities constitute a 'single employer' for the purposes of Title VII liability, courts in this circuit focus primarily on the second factor: whether the entities share centralized control of labor relations." (citations omitted)). "A defendant that is related to an entity that formally employs the plaintiff need not have 'total control or ultimate control over hiring decisions' to face liability, but the plaintiff must show that 'there is an amount of participation that is sufficient and necessary to the total employment process.'" *Ayala*, 2011 WL 1486559, at *4 (quoting *Cook*, 69 F.3d at 1241).

While the Second Circuit has not specifically applied the single employer doctrine in cases where the parent is a foreign corporation, in *Morelli v. Cedel*, the Second Circuit made clear that the United States branch of a foreign corporation would be liable for violations under Title VII and other antidiscrimination statutes.[4] 141 F.3d 39, 43 (2d Cir. 1998) (noting that Title VII, ADA, and ADEA all "apply to a foreign company's domestic operations"). The Second

---

[4] Although *Morelli* was an ADEA case, because "[t]he legislative history of the ADEA does not address the minimum employee requirement," the Second Circuit relied on the legislative history of Title VII in determining the legislative purpose behind the threshold requirement since "[t]he ADEA was modeled in large part on Title VII." *Morelli v. Cedel*, 141 F.3d 39, 45 (2d Cir. 1998).

Circuit held that an individual employed directly by a foreign corporation could count the company's foreign employees to reach the statutory employee threshold. *Id.* at 45. The Second Circuit recognized that the purpose of the threshold was to protect small businesses and such protection was not needed for a global enterprise with a small base in the United States. *Id.* The Second Circuit also noted that "U.S. subsidiaries of foreign corporations are generally subject to U.S. antidiscrimination laws, and, absent treaty protection – not an issue in this case – a U.S. branch of a foreign corporation is not entitled to an immunity not enjoyed by such subsidiaries." *Id.* at 44 (citations omitted). The Ninth Circuit has followed the Second Circuit's reasoning in counting foreign employees to reach the fifteen person threshold in a Title VII case. In *Kang v. U. Lim Am., Inc.*, the Ninth Circuit held that "[t]he fact that some of the employees of the integrated enterprise are not themselves covered by federal antidiscrimination law does not preclude counting them as employees for the purposes of determining Title VII coverage." 296 F.3d 810, 816 (9th Cir. 2002) (citing *Morelli*, 141 F.3d at 44–45)).

Plaintiff did not name Riri Group in the Complaint. However, Plaintiff has presented sufficient evidence to show that amending the Complaint to add Riri Group would not be futile. Riri USA is a wholly-owned subsidiary of Riri Group. (Def. 56.1 ¶ 15.) Defendants claim Plaintiff was fired pursuant to instructions from the CEO of Riri Group, which suggests that both entities share "centralized control of labor relations," satisfying the second prong of the single employer test. (*See* Def. 56.1 ¶¶ 24–28.) According to Defendant Howell, his "bosses in Switzerland" determined the sales project for Riri USA, and Riri USA did everything in Swiss Franc because "[w]e're a Swiss Company." (Howell Dep. 36:23–37:7, 70:8–70:10.) Also, Riri Group designed and controlled the program that organized the tracking of all of Riri USA's sales; Riri USA's sales figures were reported to Riri Group; and Riri Group organized the training of Riri USA's employees. (*See* Oral Arg. Tr. 38:9–39:21; Howell Dep. 55:18–56:6,

63:15–79:25.)  These facts support an inference that Riri Group and Riri USA had interrelated operations, common management and common ownership, acting as a single entity and thus an employer under Title VII.  While the number of employees employed by Riri Group is unknown, Riri USA has not asserted that aggregating Riri USA and Riri Group would fail to result in the requisite fifteen employees. [5]

This Court finds, consistent with the findings of other district courts, that under the logic of *Morelli*, the single employer doctrine applies to circumstances such as those present in this case, where the employee is employed by a U.S. subsidiary that is wholly owned and appears to be controlled by a foreign parent.  *See*, *e.g.*, *Sabol v. Cable & Wireless PLC*, 361 F. Supp. 2d 205, 208–09 (S.D.N.Y. 2005) (denying defendant's motion for summary judgment because there were sufficient facts on the record for a jury to find that the foreign parent and domestic subsidiary acted as a single entity or in the alternative that foreign parent was the plaintiff's actual employer); *Greenbaum v. Handlesbanken*, 26 F. Supp. 2d 649, 652 (S.D.N.Y. 1998) (applying *Morelli* to aggregate the employees of a foreign bank and its U.S. branch to reach 15 employees); *see also Pina v. Henkel Corp.*, No. 07-CV-4048, 2008 WL 819901, at *8 (E.D. Pa. Mar. 26, 2008) (denying defendant's motion to dismiss because a foreign parent would be liable under the ADEA if it acted as a single entity with its domestic subsidiary); *Bass v. Technip USA Corp.*, No. 05-CV-0652, 2005 WL 1185626, at *8 (S.D. Tex. May 6, 2005) (denying defendant's motion to dismiss because under *Morelli* a foreign parent acting as a single entity with its domestic subsidiary is liable for discrimination).  Therefore, Riri Group can be liable along with Riri USA under the single employer doctrine.

---

[5] The parties will need to conduct limited discovery to further develop the relationship between Riri Group and Riri USA and to determine the number of Riri Group employees.

Other than needing to allow limited discovery concerning the nature of the relationship between Riri Group and Riri USA and the number of employees employed by Riri Group, the Court finds that Riri Group would suffer no real prejudice in allowing Plaintiff to amend the Complaint to add Riri Group as a defendant. *See*, *e.g*, *Greenbaum*, 26 F. Supp. 2d at 65 (holding that the limited discovery needed to replace the subsidiary with parent would not prejudice the defendant); *see also Quaratino v. Tiffany & Co*., 71 F.3d 58, 66 (2d Cir. 1995) ("Leave is normally granted, especially when the opposing party is not prejudiced by the supplemental pleading."). Riri Group had prior notice of Plaintiff's claims and has even participated in the litigation. The former CEO of Riri Group submitted an affidavit in support of Riri USA's motion for summary judgment after the close of discovery. (Cerni Aff.) It is unclear whether Plaintiff had an opportunity to depose Cerni or whether Plaintiff has been given a full opportunity to conduct discovery concerning the relationship between Riri Group and Riri USA. Since it is not clear whether Plaintiff has been given full discovery concerning these issues, summary judgment in favor of Defendants would be inappropriate. *Krasner v. Episcopal Diocese of Long Island*, 431 F. Supp. 2d 320, 325–26 (E.D.N.Y. 2006) (noting it is "the rarest of cases" when a court will "grant a motion for summary judgment without the nonmoving party first having the opportunity to fully discover information that is essential to her opposition to the motion" (citations omitted)). Plaintiff's request to amend the Complaint to add Riri Group as a defendant is granted.

### (b) Plaintiff has met the *McDonnell Douglas* requirements

Title VII was amended by the PDA, to clarify that pregnancy discrimination is a form of gender discrimination prohibited by Title VII. *AT & T Corp. v. Hulteen*, 556 U.S. 701, 701 (2009); *Saks v. Franklin Covey Co.*, 316 F.3d 337, 343 (2d Cir. 2003). The amended statute states in pertinent part: "The terms 'because of sex' or 'on the basis of sex' include, but are not

limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work . . . ." 42 U.S.C. § 2000e(k). "An employment practice is unlawful in contravention of the PDA when pregnancy is 'a motivating factor' for an adverse employment action." *Briggs v. Women in Need, Inc.*, 819 F. Supp. 2d 119, 126 (E.D.N.Y. 2011); *see also Saks*, 316 F.3d at 343 (stating that Title VII protects from discrimination women who are pregnant, have given birth, or have related medical conditions); *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (same).

Title VII claims are assessed using the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–55 (1981); *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012); *Quaratino*, 71 F.3d at 64. Under the *McDonnell Douglas* framework, the Court first considers whether Plaintiff is able to establish a prima facie case of discrimination. *Quaratino*, 71 F.3d at 64. If a prima facie case is established, it creates a presumption that the employer's actions were motivated by prohibited discrimination. *Hicks*, 509 U.S. at 506. Once a prima facie case is established, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Hicks*, 509 U.S. at 507. If the employer offers a nondiscriminatory explanation, the presumption of discrimination dissolves, "and the question in adjudicating the defendant['s] motion for summary judgment becomes simply whether the evidence in plaintiff's favor, when viewed in the light most favorable to the plaintiff, is sufficient to sustain a reasonable finding that dismissal was motivated at least in part by [prohibited] discrimination." *Adamczyk v. N.Y. Dept. of Corr. Servs.*, 474 F. App'x 23, 25 (2d Cir. 2012) (summary order) (quoting *Tomassi v. Insignia Fin.*

*Grp., Inc.*, 478 F.3d 111, 114 (2d Cir. 2007)). Defendants argue that Plaintiff cannot establish a prima facie case since there is no inference of discrimination. (Def. Mem 8–11.) For the following reasons, viewing all the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has met the *McDonnell Douglas* requirements and presented sufficient evidence from which a reasonable jury could find that Plaintiff suffered pregnancy based discrimination.

### (1) Prima Facie Case

Plaintiff's burden at the initial stage is "minimal." *Holcomb*, 521 F.3d at 139 (quoting *Hicks*, 509 U.S. at 506). "A plaintiff can establish a prima facie case of pregnancy discrimination under Title VII by showing that: (1) she is a member of a protected class; (2) she satisfactorily performed the duties required by the position; (3) she was discharged; and (4) her position remained open and was ultimately filled by a non-pregnant employee. Alternatively, a plaintiff may satisfy the fourth requirement to make out a prima facie case by showing that the discharge occurred in circumstances giving rise to an inference of unlawful discrimination." *Quaratino*, 71 F.3d at 64; *see also Briggs*, 819 F. Supp. 2d at 126 (giving the elements of a prima facie case); *Germain*, 2009 WL 1514513, at *5 (same). "A plaintiff's burden to establish a *prima facie* case of discrimination 'is not onerous.' Direct evidence is not necessary." *Quaratino*, 71 F.3d at 64. Viewing the facts in the light most favorable to Plaintiff, she can make out a prima facie case.

Plaintiff easily satisfies the first, second and third prongs of the test. Plaintiff has established she was a member of a protected class, since she was pregnant at the time of her termination. *Saks*, 316 F.3d at 343 (noting that Title VII applies to women who are pregnant, have given birth, or have related medical conditions); *Kerzer*, 156 F.3d 396, 400 (2d Cir. 1998) (same). For the second prong, "plaintiff need make only a minimal showing of qualification, that is, that 'she possesses the basic skills necessary for performance of [the] job.'" *Briggs*, 819 F.

Supp. 2d at 127 (citing *Owens v. N.Y.C. Hous. Auth.*, 934 F.2d 405, 409 (2d Cir. 1991)); *see also*

*Herbert v. City of New York*, 748 F. Supp. 2d 225, 237 (S.D.N.Y. 2010) ("[A] plaintiff need not

demonstrate 'satisfactory performance of job duties' in order to make out a prima facie case.

The prima facie showing requires only a showing that she was 'qualified for the position she

held.'" (quoting *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d. Cir. 2008))). Since Plaintiff was

at the job for approximately five and half years (Def. 56.1 ¶ 1), had favorable performance

reviews (Carr Aff. Ex. Performance Appraisals),[6] and was promoted several times (Def. 56.1 ¶ 9;

Def. Howell Dep. 22:6–23:2), Plaintiff has met the second prong. *Slattery v. Swiss Reinsurance*

*Am. Corp.*, 248 F.3d 87, 92 (2d Cir. 2001) (holding that a plaintiff who had been performing for

seven years met the "minimal qualification for a job"); *Kerman-Mastour v. Fin. Indus.*

*Regulatory Auth., Inc.*, 814 F. Supp. 2d 355, 367 (S.D.N.Y. 2011) (holding that a plaintiff who

worked for defendant for "eight years before she was terminated" and was promoted several

times met the minimal requirements); *Dollman v. Mast Indus., Inc.*, 731 F. Supp. 2d 328, 338

(S.D.N.Y. 2010) (holding that plaintiff had established her qualifications for the job despite the

fact that "reviews listed areas for improvement" because "her consistent scores of 'meets

expectations' or 'exceeds expectations' show that she was a technically sound and successful

---

[6] Defendants argue that these performance evaluations should not be considered by the Court because they are "self" evaluations. However, the record illustrates that these performance evaluations are more than just self-evaluations. According to Defendant Howell and Plaintiff's deposition testimonies, Plaintiff attended meetings to discuss all self-evaluations with Defendant Howell, Defendant Howell would annotate the evaluations, and the "self" evaluations were placed in Plaintiff's personnel file, as they were for all employees. (Def. Howell Dep. 14:4–16; Pl. Dep. 73:15–74:2.) Even without the evaluations, Plaintiff has met her burden based on the number of years she worked for Riri USA and her promotions over those years. *See, e.g.*, *Kerman-Mastour v. Fin. Indus. Regulatory Auth., Inc.*, 814 F. Supp. 2d 355, 367 (S.D.N.Y. 2011) (holding that working at a place of employment for a number of years along with promotions is sufficient for a plaintiff to meet her burden of establishing that she was qualified for the position); *see also Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 92 (2d Cir. 2001) (holding that a plaintiff met the "minimal qualification for a job" by virtue of the fact that "he had been performing for seven years").

manager"). Plaintiff was terminated, satisfying the third prong. *See Feingold v. New York*, 366 F.3d 138, 156 (2d Cir. 2004) ("[Plaintiff] suffered an adverse employment action when he was fired."); *Slattery*, 248 F.3d at 95 ("[Plaintiff]'s probation and termination constituted adverse employment actions."); *Lambert v. McCann Erickson*, 543 F. Supp. 2d 265, 279 (S.D.N.Y. 2008) (finding that termination is an adverse action).

Plaintiff also meets the fourth prong. She was terminated shortly after she notified Defendant Howell that she was pregnant, and she has shown other circumstantial evidence of discrimination. "[A]n inference of discrimination arises from temporal proximity between the plaintiff's termination and the announcement of her pregnancy or her request for maternity leave . . . when accompanied by other circumstantial evidence." *Briggs*, 819 F. Supp. 2d at 128; *see also Herbert*, 748 F. Supp. 2d at 238 ("[T]he necessary inference 'may be derived from a variety of circumstances,' including, but not limited [to] 'the sequence of events leading to the plaintiff's discharge.'"(citing *Leibowitz v. Cornell Univ.,* 584 F.3d 487, 502 (2d Cir. 2009))). To meet the fourth prong, Plaintiff must establish that the Defendants knew or had reason to believe she was pregnant before the decision to terminate her was made. *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 82 (2d Cir. 2005) (noting that in the pregnancy discrimination context that "'[i]f the pregnancy is not apparent and the employee has not disclosed it to her employer,' . . . an employee must, 'as part of her prima facie case,' point to some admissible 'evidence from which a rational jury could infer that the employer knew that she was pregnant.'" (citation omitted)).

Plaintiff told her employers she was pregnant on December 3, 2009 or December 10, 2009. (Def. 56.1 ¶¶ 42–44; Pl. 56.1 42–44, 107.) Defendants contend that the decision to terminate Plaintiff was made in Fall 2009. (Def. 56.1 ¶¶ 27–29; 35–39, 41.) However, there is no documentary evidence in the record to support Defendants' claim as to when this decision

was made.[7]  Defendants only provided the statements of Defendant Howell and Cerni.  (*See* Howell Aff.; Cerni Aff.)  Also in the record is Plaintiff's Separation Agreement, which appears to have been created on December 10, 2009, either the day that Plaintiff told Defendant Howell she was pregnant, according to Defendants' assertions, or the week after Plaintiff told Defendant Howell, according to Plaintiff's assertions.  (Carr. Aff. Ex. Separation Agreement.)  Plaintiff was not fired until January 2010.  (Def. 56.1 ¶¶ 51–60.)  Viewing the facts in the light most favorable to Plaintiff, a reasonable jury could reject the statements of Defendant Howell and Cerni and find that the decision to terminate Plaintiff did not occur until after she announced her pregnancy.[8] Even assuming the decision was made in Fall 2009 and not December 2009, it is at least a disputed fact whether, because of Plaintiff's pregnancy in Summer 2009, Defendant Howell knew it was Plaintiff's plan to get pregnant again and whether this fact influenced his decision to terminate Plaintiff.  (*See* Carr Aff. Ex. EEOC Compl.)

---

[7] This case is distinguishable from the cases relied on by Defendants where there was documentary evidence that the decision to terminate plaintiff was made before plaintiff announced she was pregnant or where plaintiff never announced her pregnancy.  *Prebilich-Holland v. Gaylord Entm't Co.*, 297 F.3d 438, 441–44  (6th Cir. 2002) (holding that plaintiff could not sustain her burden when there was documentary evidence that the termination process began on November 20th and plaintiff had not told her employers she was pregnant until November 24th and she did not share her pregnancy with anyone in the office); *Clay v. Holy Cross Hosp.*, 253 F.3d 1000, 1006–07 (7th Cir. 2001) (holding that plaintiff could not sustain her burden where the only evidence supporting management's knowledge was the fact that her husband was in a large room when he stated he was going to be a father since there was no proof that the manger heard); *Geraci v. Moody-Tottrup, Intern., Inc.*, 82 F.3d 578, 581–82 (3d Cir. 1996) (holding plaintiff could not sustain her claim where she told her employers at her termination meeting that she was pregnant and there was absolutely no evidence that management knew before that she was pregnant and plaintiff never told her co-workers); *Stainkamp v. Changes Intern. of Fort Walton Beach, Inc.*, 373 F. Supp. 2d 163, 167–68 (E.D.N.Y. 2005) (holding that plaintiff could not sustain her burden where "there [was] documentary evidence that the decision to terminate" occurred on a specific date and plaintiff could provide no evidence that any of her managers knew before that date).

[8] It is for a jury to determine whether they find Cerni and Defendant Howell credible. *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 725 (2d Cir. 2010 ("[T]he assessment of a witness's credibility is a function reserved for the jury.").

In addition to temporal proximity, Plaintiff asserts several other pieces of circumstantial evidence of pregnancy discrimination, including statements made to her by Defendant Howell after her first pregnancy, statements made by Defendant Howell to Plaintiff during her termination meeting,[9] and the termination of Plaintiff's health insurance after she was hospitalized during her second pregnancy.[10]  (*See* Pl. 56.1 ¶¶ 42–44; 51–53; 59–68, 75; 100–110 Carr Aff. Ex. EEOC Compl.)  Viewing all the evidence in the light most favorable to Plaintiff, she has established the fourth prong.  *See, e.g.*, *Greenidge v. Costcos Wholesale*, No. 09-CV-4224, 2012 WL 1077455, at *3 (E.D.N.Y. Mar. 30, 2012) (holding that where employer made a statement related to plaintiff's pregnancy in her termination meeting, there was a disputed fact whether the defendant knew the plaintiff was pregnant and that the plaintiff was fired because of her pregnancy); *Herbert*, 748 F. Supp. 2d at 238 (finding that the defendant's "expressed . . . disapproval of [the plaintiff's] pregnancy" along with temporal proximity was sufficient to establish an inference of discriminatory intent); *Hall v. Family Care Home Visiting Nurse & Home Care Agency, LLC*, 696 F. Supp. 2d 190, 200 (D. Conn. 2010) (holding that there was enough circumstantial evidence in the record that "a reasonable jury could find that [the

---

[9] The fact that Defendant Howell did not admit these statements during his deposition is not dispositive at this stage.  Plaintiff's sworn deposition testimony, even if uncorroborated, is evidence that can be considered by a jury.  *See Greenidge v. Costcos Wholesale*, No. 09-CV-4224, 2012 WL 1077455, at *3 (E.D.N.Y. Mar. 30, 2012) (holding that the plaintiff's uncorroborated statement that she was told in her termination hearing that she would not be able to continue working because she was pregnant was sufficient for plaintiff to raise a triable issue of fact); *see also Hicks v. Baines*, 593 F.3d 159, 170 (2d Cir. 2010) (finding that plaintiffs' sworn affidavits were sufficient evidence to survive a summary judgment motion).

[10] Hospitalization due to pregnancy would fall under the Title VII pregnancy umbrella.  *See Briggs v. Women in Need, Inc.,* 819 F. Supp. 2d 119, 126 (E.D.N.Y. 2011) ("[T]he plain language of the statute covers not only pregnancy, but also childbirth and related medical conditions.").  Defendant Howell's termination of Plaintiff's insurance is further circumstantial evidence that he had a general anti-pregnancy animus especially when coupled with his alleged treatment of Plaintiff after her first difficult pregnancy.

defendant] was still making decisions about which employees to lay off until" after the plaintiff told defendant she was pregnant); *Rolon v. Pep Boys-Manny, Moe & Jack*, 601 F. Supp. 2d 464, 467–68 (D. Conn. 2009) (holding that the temporal proximity of two months between the adverse actions and plaintiff's supervisor's remarks "that [the plaintiff] should not be working because she had recently given birth" were sufficient to find an inference of discrimination); *Lambert*, 543 F. Supp. 2d at 279 (holding there was enough "circumstantial (and relatively weak), . . . evidence" to "raise[] a genuine issue of fact as to [the defendant's] knowledge of plaintiff's pregnancy" for the court to find that plaintiff met the fourth prong); *Calabro v. Westchester BMW, Inc.*, 398 F. Supp. 2d 281, 291 (S.D.N.Y. 2005) (holding there was enough evidence for "a reasonable inference that [the plaintiff's] pregnancy played at least some role in defendant's decision" since plaintiff had good performance reviews and her employers expressed "unhappiness" about her pregnancy).

### (2) Legitimate Reason

Since Plaintiff has established a prima facie case, Defendants must offer a legitimate reason for Plaintiff's termination, which they have done. *Kerzer*, 156 F.3d at 401. Like the evidentiary requirement for stating a prima facie case, an employer's burden to overcome the presumption of discrimination "is not a particularly steep hurdle." *Hyek v. Field Support Servs.*, 702 F. Supp. 2d 84, 93 (E.D.N.Y. 2010). It "is one of production, not persuasion; it can involve no credibility assessment." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000); *see also Lambert*, 543 F. Supp. 2d at 278 (using the *Reeves* standard). Defendants argue that Plaintiff was terminated because of the global downturn, which required Riri USA to terminate one employee and Plaintiff was chosen because she was the lowest performer at her level. (Def. 56.1 ¶¶ 27–29; 35–39.) Defendants have met their burden. Poor performance is a legitimate reason for termination. *See Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 141 (2d

Cir. 1993) (agreeing with the district court that poor performance is a legitimate reason for the adverse action); *Lambert*, 543 F. Supp. 2d at 279 (holding that poor performance is a legitimate reason for termination).

### (3) Pretext

The burden shifts to Plaintiff to show that Defendants' proffered reason is pretext. As long as Plaintiff can demonstrate that her pregnancy was a motivating or substantial reason for her termination, even if it was not the sole reason, Plaintiff can meet her burden. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 81 (2d Cir. 2001) ("[T]he plaintiff may . . . rely on evidence–circumstantial or otherwise–showing that an impermissible reason was a motivating factor, without proving that the employer's proffered explanation played no role in its conduct." (alteration and citations omitted)); *Sutera v. Schering Corp.*, 73 F.3d 13, 17 (2d Cir. 1995) ("[T]he plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors." (alteration in original) (citation omitted)); *Calabro v. Westchester BMW, Inc.*, 398 F. Supp. 2d 281, 292 (S.D.N.Y. 2005) (noting that the plaintiff "must show that her pregnancy was a motivating factor in her termination" but "she need not show that her pregnancy was the only reason").

At the pretext stage, "a Title VII plaintiff may also offer evidence of remarks made by the employer at or about the time of the adverse action 'to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark.' 'The more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the alleged discriminatory behavior, the more probative that remark will be.'" *Herbert*, 748 F. Supp. 2d at 239 (citations omitted); *see also Moccio*, 2012 WL 3648450, at *31 ("Discriminatory or stereotypical remarks are admissible in gender discrimination cases because they may tend to

show discriminatory animus."); *Hall*, 696 F. Supp. 2d at 199 ("[E]ven if one stray remark is by itself insufficient proof, it may bear a more ominous significance when considered within the totality of all the evidence." (internal citation marks omitted) (quoting *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 136 (2d Cir. 2000))); *Smith v. K & F Indus.*, 190 F. Supp. 2d 643, 651 (S.D.N.Y. 2002) ("Where offensive remarks are combined with other evidence of discriminatory intent, courts are reluctant to grant summary judgment for the defendant." (citations omitted)).

A court may re-consider evidence presented to find an inference of discrimination at the prima facie stage in the pretext stage. *See Calabro v. Westchester BMW, Inc.*, 398 F. Supp. 2d 281, 292 (S.D.N.Y. 2005) (holding that a plaintiff "may carry her burden 'by reliance on the evidence comprising the *prima facie* case, without more.'" (quoting *Holtz*, 258 F.3d at 79)); *see also Herbert*, 748 F. Supp. 2d at 241 ("To defeat summary judgment, [plaintiff] need only show that 'the evidence taken as a whole, supports a sufficient rational inference of discrimination.'" (citations omitted)). The evidence submitted by Plaintiff to support her prima facie case is sufficient for the Court to find that there is at least a question of fact as to whether Defendants' proffered reasons were pretext. Plaintiff was terminated shortly after telling Defendant Howell that she was pregnant. (Def. 56.1 ¶¶ 42–44; 51–60; Carr. Aff. Ex. EEOC Compl.) Plaintiff has submitted her performance evaluations, which shows Plaintiff was performing well at her job. (Carr Aff. Ex. Performance Appraisals.) In her deposition, Plaintiff testified to Defendant Howell's statements both after her first pregnancy and during her termination meeting regarding Plaintiff's desire to start a family. (Pl Dep. 38:7–9, 80:15–19, 164:16–24.) Plaintiff also testified to the cancelation of her insurance, despite a two-week extension by Defendant Howell to consider whether she wanted to accept the Separation Agreement. (Pl. Dep. 63:16–64:25.) These facts are sufficient to raise a question as to whether Defendants' proffered reasons were pretext. *See*, *e.g.*, *Herbert*, 748 F. Supp. 2d at 241 ("The evidence that Defendants' proffered

reasons were false, and [defendants'] contemporaneous statements that [plaintiff]'s pregnancy was having a detrimental effect on the school, permit a 'rational inference' that Defendants' true motives were discriminatory."); *Dollman*, 731 F. Supp. 2d at 340 (holding that "inconsistent evidence about the circumstances of [the plaintiff's] termination" were sufficient for the plaintiff to make pretext a question most "appropriately resolved by a jury"); *Hall*, 696 F. Supp. 2d at 201 (discrepancies in the record about when exactly the decision to terminate the plaintiff was made along with the fact that the plaintiff was the only employee terminated was sufficient for plaintiff's case to go to a jury); *Smith*, 190 F. Supp. 2d at 651 (holding that the temporal proximity of the plaintiff's announcement of her pregnancy to her negative performance review along with "inappropriate comments and intrusive inquiries regarding her pregnancy" were sufficient to find pretext at the summary judgment stage). The Court denies Defendants' motion for summary judgment on the Title VII disparate treatment claim as to Riri USA.[11]

---

[11] While Plaintiff has provided sufficient evidence for her disparate treatment claim, Plaintiff has presented no evidence to support a disparate impact claim. Plaintiff alleges she suffered disparate impact in the Complaint, but she fails to allege any facts to support this claim. (Compl. at ¶¶ 33–37.) "Disparate impact claims 'are concerned with whether employment policies or practices that are neutral on their face and were not intended to discriminate have nevertheless had a disparate effect on [a] protected group.'" *Reynolds v. Barrett*, 685 F.3d 193, 201 (2d Cir. 2012) (citations omitted). "To prevail under the disparate impact theory of liability, a plaintiff must show that the employer 'uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin.'" *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 151 (2d Cir. 2012) (quoting 42 U.S.C. § 2000e–2(k)(1)(A)(i)). "This requires a plaintiff to (1) 'identify a specific employment practice' or policy; '(2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two.'" *Chin*, 685 F.3d at 151 (citations omitted). Disparate impact is proven through statistical evidence. *See M.O.C.H.A. Soc'y, Inc. v. City of Buffalo*, 689 F.3d 263, 273 (2d Cir. 2012) ("[A] Title VII [disparate impact] claim requires a plaintiff to make a statistical showing that a challenged employment practice has a disparate adverse impact on the protected class . . . ."); *Chin*, 685 F.3d at 151 ("The statistics must reveal that the disparity is substantial or significant," and "must be of a kind and degree sufficient to reveal a causal relationship between the challenged practice and the disparity." (citations omitted)). Plaintiff has pointed to no policy that had a discriminatory impact nor has Plaintiff provided any statistical evidence. Therefore, Plaintiff cannot maintain a disparate impact claim and this claim is dismissed.

### ii. Defendant Howell cannot be held liable under Title VII

Defendant Howell's motion for summary judgment is granted as to Plaintiff's Title VII claim. An individual cannot be liable as an employer under Title VII. *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) ("[I]ndividuals are not subject to liability under Title VII." (citations omitted)); *Workneh v. Pall Corp.*, No. 10-CV-3479, 2012 WL 4845836, at *6 (E.D.N.Y. Oct. 11, 2012) (dismissing Title VII claims against individual defendants "because there is no individual liability under Title VII"); *Moccio v. Cornell Univ.*, No. 09-CV-3601, 2012 WL 3648450, at *36 (S.D.N.Y. Aug. 27, 2012) ("In the Second Circuit, individuals cannot be held personally liable under Title VII. Personal liability is unavailable regardless of whether a supervisor has been shown to have committed discrimination."). As a matter of law, Plaintiff cannot sustain her federal pregnancy discrimination claim against Defendant Howell.

### c. Executive Law 296

#### i. Riri USA can be liable under NYSHRL

##### (a) Riri USA is an employer under the NYSHRL

Riri USA is an employer under the NYSHRL because the NYSHRL has a four employee minimum requirement for employer liability. N.Y. Exec. Law § 292(5). ("The term 'employer' does not include any employer with fewer than four persons in his employ."); *see also Argyle Realty Assocs. v. N.Y. Div. of Human Rights*, 882 N.Y.S.2d 458, 462 (App. Div. 2009). Riri USA had seven employees at the time Plaintiff was fired and has had up to nine employees. (Def. 56.1 ¶¶ 14–15, 20, 71.) Riri USA, therefore, meets the statutory requirements for the definition of an employer under New York law. Thus, RIRI USA can be liable under NYSHRL even without aggregating Riri Group's employees.

**(b) Plaintiff has met her substantive burden under NYSHRL**

Plaintiff has met her burden of establishing a claim under NYSHRL. NYSHRL claims, like Title VII claims, are analyzed under the *McDonnell Douglas* framework. *Germain v. County of Suffolk*, No. 07-CV-2523, 2009 WL 1514513, at *8 (E.D.N.Y. May 29, 2009) ("Employment discrimination and retaliation claims under [NYSHRL] are analyzed under the same framework as claims brought pursuant to Title VII." (citing *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708 (2d Cir. 1996))); *Lambert*, 543 F. Supp. 2d at 277 ("Employment discrimination claims brought under the NYSHRL and NYCHRL are evaluated under the same standards that govern Title VII."); *see also Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) ("We consider [plaintiff's] state law claims in tandem with her Title VII claims because New York courts rely on federal law when determining claims under the New York [State] Human Rights Law." (alterations in original) (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1177 (2d Cir. 1996))). Given that Plaintiff has met her substantive burden under Title VII and established a prima facie case and sufficient facts to raise a question of pretext, she has also met her burden under NYSHRL, and Riri USA's motion for summary judgment is, therefore, denied as to Plaintiff's NYSHRL claim.

**ii. Defendant Howell could be liable under NYSHRL**

Viewing the facts in the light most favorable to Plaintiff, a jury could find Defendant Howell liable under the NYSHRL. There are two separate provisions of the NYSHRL under which Defendant Howell could be found liable, Sections 296(1) and 296(6).

Section 296(1) of the NYSHRL provides for individual liability where a defendant has "an ownership interest," or if the defendant has "the authority to 'hire and fire' employees." *Edwards v. Jericho Union Free Sch. Dist.*, No. 11-CV-3261, 2012 WL 5817281, at *7 (E.D.N.Y. Nov. 16, 2012); *see also Scalera v. Electrograph Sys., Inc.*, No. 08-CV-0050, 2012 WL 991835,

at *14–15 (E.D.N.Y. March 26, 2012) (noting the circumstances under which individuals may be liable under NYSHRL). Defendant Howell had the power to hire and fire employees. (Def. 56.1 ¶ 8.) Therefore, he could be liable under Section 296(1).

Section 296(6) of the NYSHRL provides for individual liability where a person "aid[s], abet[s], incite[s], compel[s] or coerce[s] the doing of any of the acts forbidden under this article, or [attempts] to do so." N.Y. Exec. Law § 296(6). The Second Circuit has read § 296(6) broadly and found that both supervisors and co-workers who "'actually participate[] in the conduct giving rise to [the] discrimination'" can be liable even if they technically do not have the ability to hire and fire employees. *Feingold v. New York*, 366 F.3d 138, 157 (2d Cir. 2004) (citations omitted); *see also Scalera*, 2012 WL 991835, at *14–15 (citations omitted) ("An individual can also be held liable under § 296(6) when he or she 'actually participates in the conduct giving rise to a discrimination claim.'"). According to Plaintiff, Defendant Howell had anti-pregnancy animus and he was a motivating cause for Plaintiff's termination. (Pl. 56.1 ¶¶ 42–44, 107; Carr Aff. Ex. EEOC Compl.) There is also enough evidence to create an issue of triable fact as to whether Defendant Howell "participat[ed] in the conduct giving rise to the discrimination" and thus could also be held liable under Section 296(6). *See*, *e.g.*, *Feingold,* 366 F.3d at 158 ("[Plaintiff] has presented sufficient evidence to create a triable question as to whether each of the named individual defendants 'actually participate[d]' in the conduct giving rise to [Plaintiff]'s claim of unlawful discrimination in violation of the NYSHRL."). As Plaintiff has established the *McDonnell Douglas* requirements against Riri USA, she has also established the *McDonnell Douglas* requirements against Defendant Howell, who was the primary actor. (*See supra* Part II(b)(i)(b)). Thus, this Court finds that there is sufficient evidence in the record from which a jury could find Defendant Howell liable under NYSHRL.

**III.     Conclusion**

For the foregoing reasons, Plaintiff is granted leave to amend the Complaint to add Riri Group as a defendant.  The Court grants Defendant Howell summary judgment on all of Plaintiff's Title VII claims and denies Defendant Howell summary judgment on Plaintiff's NYSHRL claim.  The Court grants Defendant Riri USA summary judgment on Plaintiff's Title VII disparate impact claim and denies Defendant Riri USA summary judgment on Plaintiff's Title VII disparate treatment and NYSHRL claims.

SO ORDERED:


_____s/MKB_____
MARGO K. BRODIE
United States District Judge

Dated: February 27, 2013
        Brooklyn, New York