UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

LOREDANA INGENITO,

                               Plaintiff,

              v.

RIRI USA, INC., BENJAMIN HOWELL, II, RIRI
SA and RIRI GROUP,

                               Defendants.

-----------------------------------------------------------------

**MEMORANDUM & ORDER**
11-CV-2569 (MKB)

MARGO K. BRODIE, United States District Judge:

       Plaintiff Loredana Ingenito brings the above-captioned action against Defendants Riri

USA, Inc. ("Riri USA"), Benjamin Howell, II, Riri SA and Riri Group, alleging violations of

Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Pregnancy Act of 1978

("PDA"), and the New York State Human Rights Law ("NYSHRL").  Riri SA and Riri Group

(collectively, "Movants") moved to dismiss Plaintiff's claims pursuant to Rules 12(b)(2) and (6)

of the Federal Rules of Civil Procedure.[1]  For the reasons set forth below, the Court grants the

motion to dismiss as to Riri Group, and denies the motion to dismiss as to Riri SA.

_____

      [1]  Riri SA also argues that Plaintiff's Second Amended Complaint, which was filed
electronically, should be dismissed because counsel failed to sign the Complaint.  (Defendants'
Memorandum of Law in Support of Riri SA's and Riri Group's Motion to Dismiss ("Def.
Mem."), Docket Entry No. 67, at 5–6; Defendants' Reply Memorandum of Law in Support of
Riri SA's and Riri Group's Motion to Dismiss ("Def. Reply Mem."), Docket Entry No. 70, at 3–
4.)  In the Eastern District of New York, electronic filing of a document using a CM/ECF login
and password is sufficient to show that an attorney "signed" the document.  (United States
District Court for the Eastern District of New York, *CM/ECF User's Guide* 3–4, *available at*
https://img.nyed.uscourts.gov/files/forms/ecf-usermanual.pdf.)  Furthermore, counsel for
Plaintiff submitted a signature page as an attachment to her papers in opposition to the motion to
dismiss.  (Exhibit 10, annexed to Plaintiff's Memorandum of Law and Affirmation in Opposition

## I.    Procedural Background

Plaintiff brought the above-captioned action against Riri USA and Benjamin Howell, II, in the Supreme Court of the State of New York, County of Queens.  Defendants removed the action to this Court on May 27, 2011.  The Complaint asserted claims for pregnancy discrimination under both disparate impact and disparate treatment theories pursuant to Title VII, as amended by the PDA; pregnancy discrimination pursuant to the NYSHRL, the American with Disabilities Act ("ADA"), the Genetic Information Nondiscrimination Act ("GINA"), and the Family and Medical Leave Act of 1993 ("FMLA"); due process violations pursuant to the Due Process Clause of the U.S. Constitution; and intentional infliction of emotional distress pursuant to New York state law.  Defendants moved for summary judgment on all claims, and by Memorandum and Order dated February 27, 2013, the Court granted Howell summary judgment as to Plaintiff's Title VII claims and denied Howell summary judgment as to Plaintiff's NYSHRL claim.  The Court granted Defendant Riri USA summary judgment on Plaintiff's Title VII disparate impact claim and denied Riri USA summary judgment on Plaintiff's Title VII disparate treatment and NYSHRL claims.[2]  Plaintiff requested and was granted leave to amend the Complaint to add Movants as defendants.

_____

to Defendants' Motion to Dismiss ("Pl. Opp'n Mem."), Docket Entry No. 71.)  The Court declines to strike the Second Amended Complaint.

[2]  At oral argument on Riri USA's summary judgment motion, Plaintiff withdrew her ADA, GINA, FMLA, due process, and intentional infliction of emotional distress claims.  (Oral Arg. Tr. dated Aug. 23, 2013, 26:19−29:4.)

On April 18, 2013, Plaintiff submitted her Revised[3] Amended Complaint, adding claims of unlawful discriminatory practices in violation of the NYSHRL and of disparate treatment in violation of Title VII against Movants.  In May 2013, Plaintiff sought to serve Howell, who is listed on Riri SA's website as its agent in the United States, as Movants' representative.  On May 3 and May 7, 2013, Magistrate Judge Roanne Mann granted Plaintiff leave to serve Howell as Movants' agent, stating that Movants could thereafter litigate whether Howell was authorized to accept process on its behalf.  Howell accepted a waiver of service on May 8, 2013, and discovery was reopened for the purposes of determining whether the Court has jurisdiction over Movants. (Order dated January 7, 2014, Docket Entry No. 63.)  Jurisdictional discovery closed on April 11, 2014.  (*Id.*)  On May 9, 2014, Movants moved to dismiss the Second Amended Complaint pursuant to Rules 12(b)(2) and (6) of the Federal Rules of Civil Procedure, arguing that (1) the Court lacks personal jurisdiction over Movants, (2) Plaintiff fails to state a claim pursuant to Title VII because she failed to exhaust her administrative remedies against Movants, and (3) Plaintiff's NYSHRL claims against Movants are barred by the statute of limitations.  For the reasons set forth below, the Court denies Movants' motion to dismiss as to Riri SA, but grants the motion as to Riri Group.

## II.  Factual Background

The Court assumes familiarity with the parties and background to this case, which is set forth in greater detail in its February 27, 2013 Memorandum and Order.  *Ingenito v. Riri USA,*

---

[3]  Plaintiff initially submitted her Amended Complaint on April 10, 2013, but was directed to revise the Amended Complaint to amend the caption and remove all dismissed and withdrawn claims.  (*See* Docket Entry Nos. 39, 41.)  The Revised Amended Complaint was submitted on April 18, 2013.  (*See* Docket Entry No. 42.)  A Second Amended Complaint was filed on November 19, 2013.  (*See* Docket Entry No. 56.)

*Inc.*, No. 11-CV-2569, 2013 WL 752201 (E.D.N.Y. Feb. 27, 2013). The facts necessary to decide the motions before the Court are outlined below.

### a. Riri Group

According to Defendants, "Riri Group" is not a legal entity, but rather is an informal trade name, used primarily for marketing purposes and to refer to Riri SA and its affiliates. (Moretta Decl. ¶ 5.) Riri Group SA was, at one time, a separate corporate entity, but was merged into Riri SA in 2008, and "Riri Group" no longer exists as an entity incorporated in any jurisdiction. (Moretta Decl. ¶ 5.) It does not do business in the state of New York or anywhere else. (Moretta Decl. ¶ 5.) Riri Group is not a taxable entity and does not have income, assets, employees, or any separate business of its own. (Moretta Decl. ¶ 5.)

Plaintiff alleges that Howell is an employee and agent of Riri Group. (Second Am. Compl. ("SAC") ¶ 5, 8.) Because of this relationship, Plaintiff alleges that Riri Group is liable to Plaintiff for any discriminatory practices of its supervisors, managers, officers, employees or agents. (SAC ¶ 50.)

### b. Riri SA

Riri SA is a Swiss corporation, with its principal place of business in Switzerland, that manufactures and distributes zippers, buttons, fasteners, and snaps internationally. (Moretta Decl. ¶ 4.) Riri SA has several affiliate corporations, and is the parent corporation of Riri USA. (Cerni Aff. ¶ 3; Moretta Decl. ¶ 6.) Riri SA is the sole stockholder of Riri USA and maintains control over Riri USA's board of directors and executive personnel. (SAC ¶¶ 11, 22.) Riri SA does not directly solicit business in the United States, but instead acts through Riri USA as a sales and distribution representative. (Moretta Decl. ¶¶ 6, 17.) All Riri-affiliated product sales in the United States are made by and through Riri USA. (Moretta Decl. ¶ 21.) Riri SA does not

own or lease any property in New York.  (Moretta Decl. ¶ 11.)  It does not own any assets located in New York.  (Moretta Decl. ¶ 12.)  During the time Plaintiff was employed with Riri USA, Riri SA's executive officers included Chief Executive Officer ("CEO") Andrea Cerni, (Cerni Aff. ¶ 1; SAC ¶ 28), and now Chief Financial Officer ("CFO") Andrea Moretta, (Moretta Decl. ¶ 1).

Plaintiff contends that Howell is an employee of Riri SA.  (SAC ¶ 4.)  On a website maintained by Movants, Howell is listed as an agent of "Riri Group."  (SAC ¶ 26.)  Movants also post on their website that "Riri Group" maintains an office in New York, New York.  (SAC ¶ 26.)  Riri SA contends that it does not have any "individuals on the payroll" in the United States, or any employees in New York.  (Cerni Aff. ¶ 5; Moretta Aff. ¶ 10.)

### c.  Riri USA and Benjamin Howell

Riri USA is a Delaware corporation with its primary place of business in New York. (Howell Aff. ¶ 2; Moretta Decl. ¶ 6.)  Riri USA sells zippers, snaps, buttons and rivets to high-end clothing manufacturers.  (Moretta Decl. ¶¶ 4, 6.)  Riri USA is a wholly-owned subsidiary of Riri SA and is part of "Riri Group."  (Howell Aff. ¶ 3.)  Riri USA "was formed to act as Riri SA's sales and distribution representative in the United States, as Riri SA does not directly solicit business in the United States."  (Moretta Decl. ¶ 6.)  Riri SA and Riri USA file separate tax returns, keep separate books and records, and maintain separate bank accounts.  (Moretta Decl. ¶¶ 15, 18–19.)  Over at least the past fourteen years, Riri SA has not loaned Riri USA money or extended it credit.  (Moretta Decl. ¶ 20.)  Andrea Moretta, the CFO of Riri SA, is a member of the Board of Directors of Riri USA.  (Moretta Decl. ¶ 1.)  Riri SA's Board of Directors holds meetings separate and apart from the regular meetings held by Riri USA's Board of Directors. (Moretta Decl. ¶ 23.)

At the time of Plaintiff's termination, Riri USA had three offices: one in New York with five employees, one in Los Angeles with one employee, and one in San Francisco with one employee. (Howell Aff. ¶ 29.) The employees in Los Angeles and San Francisco both functioned as salespersons. (Howell Aff. ¶ 29.) Riri SA and Riri USA do not share office space. (Moretta Decl. ¶ 11.)

Orders and sales of merchandise made by employees of Riri USA are reported to Riri SA, and Riri SA keeps the related sales documents and records. (SAC ¶ 32.) Riri SA generates and maintains, in Switzerland, all sales documents for Riri USA. (Dep. of Lawrence Benjamin Howell II, dated Feb. 16, 2012 ("Howell Dep."), annexed to Pl. Opp'n as Ex. 4, at 64:3–16.) Riri SA sends Riri USA the documents periodically, which allows Riri USA to sort the sales documents by salesperson, client, or customer. (Howell Dep. 64:11–24.) Sales information is maintained in Swiss Francs. (Howell Dep. 68:2–24.) According to Howell, Riri USA maintains all of its records in Swiss Francs, because "[w]e're a Swiss company." (Howell Dep. 70:8–14.)

Riri USA has control over the decision to make sales in the United States and to extend credit to customers in the United States. (Moretta Decl. ¶ 21.) When Riri USA makes a sale or receives an order for product, Riri USA enters into purchase orders or agreements with customers in the United States. (Moretta Decl. ¶ 24.) Riri USA then enters the record of the sale into the Riri electronic system, which is a "big mainframe system" maintained in Switzerland by Riri SA. (Howell Dep. 64:3–7, 72:11–13.) For each sale, the computer system has a set price list for each individual account, which is how the cost of each product — which may vary based on factors like zipper length and finish — is determined. (Howell Dep. 74:17–25.) Once a sale is recorded, the system generates an electronic confirmation for the client and the salesperson. (Howell Dep. 72:12–15.) The goods are shipped, and the system generates an invoice. (Howell

Dep. 72:15–17.) Once an invoice is generated, the sale is booked in the system. (Howell Dep. 72:18–20.) "[T]his is how Switzerland pays their taxes and does all the things that they do." (Howell Dep. 72:20–22.) While clients of Riri USA are billed in dollars, the reports of the sales are maintained in Swiss Francs. (Howell Dep. 73:12–16.) Riri SA compiles the sales report file on a monthly basis and sends it to Howell at Riri USA. (Howell Dep. 71:4–72:5.) Riri USA is able to extract from that report information related solely to its sales in the United States, and can sort the data by each sales agent or salesperson. (Howell Dep. 71:4–72:5.)

Howell is Riri USA's CEO. (SAC ¶ 35; Howell Aff. ¶ 1; Moretta Decl. ¶ 8.) He has held the position since he began working at the company eleven years ago. (Howell Aff. ¶ 1.) Howell has the authority to hire, fire, promote, transfer, discipline, and otherwise oversee the work activities of Plaintiff. (SAC ¶ 37.) As CEO of Riri USA, Howell is in charge of projections for profit and loss of the company, in charge of the employees, does some selling and some administrative work, and is the "liaison with the home office which is in Switzerland, the headquarters." (Howell Dep. 6:20–7:3.) According to Movants, Howell is not authorized to act individually as Riri SA's agent. (Moretta Decl. ¶ 8.)

Plaintiff alleges Movants are responsible for hiring and training Riri USA's personnel, and that Movants make policy determinations, prepare marketing and sales materials, and set prices for Riri USA. (SAC ¶¶ 25, 27.) Movants contend that Riri USA has the authority to hire or fire its own employees. (Moretta Decl. ¶ 7.)

### d. Plaintiff's employment and termination

Plaintiff worked for Riri USA from approximately August 4, 2004 until January 13, 2010, in its New York office. (*See* Howell Aff. ¶¶ 4–5.) Plaintiff began working at Riri USA as a receptionist. She was promoted to customer service representative and then salesperson, which

is also known as account executive, sales executive, and sales representative.  Plaintiff's duties included developing new business and maintaining current customer accounts.  During Plaintiff's tenure, the only other salesperson in the New York Office was Anna Lenhoff, who was hired by Riri USA in 2006.

In 2008 and 2009, Movants claims to have experienced "a dramatic drop in sales and revenue."  (Cerni Aff. ¶ 7; Howell Aff. ¶ 9.)  According to Movants, sales fell by approximately thirty-five percent both at Riri SA and at Riri USA.  (Howell Aff. ¶ 9.)  Movants closed a factory and laid off approximately nineteen percent of its workforce.  (Cerni Aff. ¶ 8; Howell Aff. ¶ 9).  In September 2009, during "Riri Group's annual worldwide sales meeting" in Switzerland, Cerni informed Howell that Riri USA would "share in the pain" of the decline in business, and instructed Howell to lay off at least one Riri USA employee.  (Howell Aff. ¶¶ 10–11; Cerni Aff. ¶¶ 9–10.)  Howell protested, indicating that Riri USA "could not afford to lose anyone."  (Howell Aff. ¶ 13.)  Cerni agreed to delay a lay off.  (Howell Aff. ¶ 14.)  Cerni and Howell discussed Riri USA's employees and agreed that Plaintiff was the "weakest link," and thus any lay off would result in Plaintiff's termination.  (Howell Aff. ¶ 14; Cerni Aff. ¶ 11.)  Howell contends that this decision was based on a decline in Plaintiff's sales figures.  (Howell Aff. ¶ 16.)  Cerni contends that Plaintiff was "less needed than other employees."  (Cerni Aff. ¶ 11.)  Defendants allege that on November 30, 2009, Cerni telephoned Howell and instructed him to terminate Plaintiff's employment.  (Howell Aff. ¶ 20; Cerni Aff. ¶ 12.)  Howell "asked and received permission" from Cerni to wait until January 2010 to communicate the termination decision to Plaintiff.  (Howell Aff. ¶ 21; Cerni Aff. ¶ 13.)

On or about December 3, 2009, Plaintiff alleges that she informed Howell that she was pregnant.  (SAC ¶ 40.)  Howell contends that he communicated that information to Cerni

sometime between the day Plaintiff informed him she was pregnant and December 16, 2009. (Cerni Aff. ¶ 14; Howell Aff. ¶¶ 22–23.)  On January 13, 2010, Howell informed Plaintiff that she was being terminated.  (SAC ¶¶ 41–43; Howell Aff. ¶ 27.)  Plaintiff alleges that Mark Teel, Vice President of Sales for Riri USA, was present during this conversation with Howell.  (SAC ¶ 44.)  According to Plaintiff, Howell told her she was being terminated due to her pregnancy and because she wanted to start a family, (SAC ¶ 43), and Andrea Cerni directed Howell to terminate Plaintiff's employment, (SAC ¶ 30).  As a result of the termination, Plaintiff alleges that she has been unable to work, has lost wages, and has sustained mental distress and other damages.  (SAC ¶ 51.)

### e.   EEOC charge

Plaintiff filed a charge of discrimination with the Federal Equal Employment Opportunity Commission ("EEOC") within 300 days of her termination.  (SAC ¶ 58.)  On or about October 21, 2010, the EEOC issued Plaintiff a "Right to Sue" letter.  (SAC ¶ 60.)  The instant action was commenced within 90 days of Plaintiffs' receipt of the Right to Sue letter.  (SAC ¶ 61.)

## III.  Discussion

### a.   Standards of review

#### i.   Rule 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, "[a] plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) (citing *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)).  The showing a plaintiff must make to meet that burden is governed by a "sliding scale," which "'varies depending on the procedural posture of

the litigation.'" *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.1990)). If a defendant challenges personal jurisdiction by filing a Rule 12(b)(2) motion, "the plaintiff need persuade the court only that its factual allegations constitute a *prima facie* showing of jurisdiction." *Id.* at 85 (quoting *Ball*, 902 F.3d at 197). Prior to discovery, a plaintiff need only plead "an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant." *Id.* (quoting *Ball*, 902 F.3d at 197); *Penguin Grp.*, 609 F.3d at 35 ("Such a showing entails making 'legally sufficient allegations of jurisdiction,' including 'an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant.'" (quoting *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (alteration in original)). After discovery, the plaintiff's *prima facie* showing must be factually supported.[4] *Dorchester Fin. Sec.*, 722 F.3d at 85 (quoting *Ball*, 902 F.3d at 197). "Conclusory allegations based only on information and belief are not sufficient" to provide such factual support. *McGlone v.*

---

[4] Ordinarily, an evidentiary hearing is not required if one is not requested. *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013) ("[W]e do not hold that the district court in this case erred in failing to hold an evidentiary hearing, as there is no indication that either party requested one.") However, "[i]f the defendant contests the plaintiff's factual allegations, then a hearing is required, at which the plaintiff must prove the existence of jurisdiction by a preponderance of the evidence." *Id.* at 85 (quoting *Ball v. Metallurgie Hoboken–Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir.1990)). Here, Movants purport not to contest Plaintiff's factual allegations in the SAC and choose instead to rely on the insufficiency of the allegations to establish personal jurisdiction. However, Movants' memorandum of law in support of the motion to dismiss repeatedly contradicts factual allegations put forth by Plaintiff. For example, Movants argue that Riri USA is not financially dependent on Riri SA for operations, and that Riri SA does not determine Riri USA's employment policies and procedures. (Def. Mem. 7.) Because Movants represent that they do not contest the facts as alleged by Plaintiff in the SAC, the Court declines to treat Movants' argument on the facts as a request for an evidentiary hearing, and will analyze the challenge to jurisdiction for a *prima facie* showing of personal jurisdiction, supported by facts in the record.

*Thermotex, Inc.*, 740 F. Supp. 2d 381, 383 (E.D.N.Y. 2010) (citing *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 183–84 (2d Cir.1998)).

In resolving a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), a district court may consider materials outside the pleadings. *Dorchester Fin. Sec.*, 722 F.3d at 86 (citing *S. New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010)); *see also UTC Fire & Sec. Ams. Corp., Inc. v. NCS Power, Inc.*, 844 F. Supp. 2d 366, 370 (S.D.N.Y. 2012) ("In deciding a motion to dismiss for lack of personal jurisdiction, the court has discretion to proceed either upon written submissions or through a full evidentiary hearing on the merits, but, without a hearing or jurisdictional discovery, the pleadings and affidavits are construed, and any ambiguity is resolved, in favor of the plaintiff." (internal quotation marks and citation omitted)); *see also In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 676 (2d Cir. 2013) (noting that jurisdictional discovery had taken place and requiring evidentiary support for jurisdictional allegations); *McGlone*, 740 F. Supp. 2d at 384 (looking to record developed once jurisdictional discovery as to Thermotex was complete to decide a motion to dismiss). The court must construe all jurisdictional allegations "in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." *Elsevier, Inc. v. Grossman*, No. 12-CV-5121, 2015 WL 72604, at *4 (S.D.N.Y. Jan. 5, 2015) (quoting *A.I. Trade Fin., Inc. v. Petra Bank,* 989 F.2d 76, 79–80 (2d Cir. 1993)) (internal quotation marks omitted). "However, the court 'will not draw argumentative inferences in the plaintiff's favor' and need not 'accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *In re Terrorist Attacks,* 714 F.3d at

673 and citing *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* (*Licci II*),[5] 673 F.3d 50, 59

(2d Cir. 2012)).

In a federal-question case such as this, determining personal jurisdiction over a foreign

defendant requires a two-step inquiry. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* (*Licci*

*IV*), 732 F.3d 161, 168 (2d Cir. 2013). First, the Court must look to the law of the forum state to

determine if personal jurisdiction will lie under the laws of that state. *Id.* (citing *Best Van Lines,*

*Inc. v. Walker,* 490 F.3d 239, 242 (2d Cir. 2007)). Here, the Court looks to New York State's

long-arm statute to determine whether the exercise of jurisdiction would be appropriate pursuant

to state law. Next, the Court must determine whether the exercise of personal jurisdiction over

the defendant would comport with the Due Process Clause of the United States Constitution. *Id.*

(citing *Best Van Lines*, 490 F.3d at 242 and *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316

(1945)).

### ii. Rule 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a court "must take all of the factual allegations in the complaint as true." *Pension*

*Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv.*

*Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009)); *see also Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir.

2013) (quoting *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)); *Matson v. Bd. of Educ.*,

---

[5] *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, began in the Southern District of New York in 2010. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* (*Licci I*), 704 F. Supp. 2d 403. (S.D.N.Y. 2010). It was appealed to the Second Circuit, *Licci II*, 673 F.3d 50 (2d Cir. 2012), which certified questions regarding the scope of New York's long-arm statute to the New York Court of Appeals, *Licci III*, 20 N.Y.3d 327 (2012). The Second Circuit subsequently considered the case in light of the Court of Appeals' answer to the certified questions. *Licci IV*, 732 F.3d 161 (2d Cir. 2013).

631 F.3d 57, 63 (2d Cir. 2011) (quoting *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 320 (2d Cir. 2009)). A complaint[6] must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson*, 631 F.3d at 63 (quoting *Iqbal*, 556 U.S. at 678); *see also Pension Ben. Guar. Corp.*, 712 F.3d at 717–18. A complaint need not contain "detailed factual allegations," but a plaintiff must do more than present "an unadorned, the defendant-unlawfully-harmed-me accusation." *Matson*, 631 F.3d at 63 (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Pension Ben. Guar. Corp.*, 712 F.3d at 718 (alteration in original) (quoting *Iqbal*, 556 U.S. at 679). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

---

[6] When deciding a motion to dismiss, a court's review is limited to the four corners of the complaint, as well as (1) documents attached to the complaint, (2) any documents incorporated in the complaint by reference, (3) any documents deemed integral to the complaint, and (4) public records. *See Nielsen v. Rabin*, 746 F.3d 58, 65 (2d Cir. 2014) (Dennis, J. dissenting) (documents attached to the complaint and those incorporated by reference); *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (same); *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006) (documents integral to the complaint); *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (public records).

### b. Personal jurisdiction

#### i. Riri Group

Movants argue that Riri Group is not a legal entity and is merely a "colloquial term used to describe the various products manufactured and sold by Riri SA and its affiliates." (Def. Mem. 4.) Plaintiff argues that Howell has been designated as, and acts as, Riri Group's "agent" in the United States. (Pl. Opp'n Mem. 5–6.) The evidence before the Court shows that Riri Group is not a legal entity, and that the term "Riri Group" is a mere trade name. (Moretta Decl. ¶ 5.) Even assuming Riri Group did exist as a separate entity, Plaintiff has alleged no facts that would support a finding of jurisdiction over Riri Group.[7] Thus, the motion to dismiss is granted as to Riri Group.

#### ii. General jurisdiction

Under New York law, a Court may exercise general jurisdiction, relating to any cause of action, over a foreign defendant who is "doing business" in New York "with a fair measure of permanence and continuity." *Sonera Holding B.V. v. Çukurova Holding A.S.*, 750 F.3d 221, 225 n.2 (2d Cir.) (quoting *Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 267 (1917)), *cert. denied*, 134 S. Ct. 2888 (2014). Movants argue that Riri SA lacks the "continuous and systematic" course of business in New York State to satisfy the requirements of New York's Civil Practice Law and Rules ("CPLR") section 301 to confer general jurisdiction. (Def. Mem. 9.) Plaintiff argues that Riri SA maintains a "presence" in New York State through their wholly-owned subsidiary, Riri USA, and through Howell. (Pl. Opp'n Mem. 4.) Plaintiff argues that jurisdiction is proper because Riri USA is an "agent" or "mere department" of Riri SA, its

---

[7] In her Memorandum of Law submitted in opposition to Movants' motion to dismiss, Plaintiff treats Riri SA and Riri Group as one collective entity, referring to Movants collectively as "Riri SA." (Pl. Opp'n Mem. 1.)

foreign parent.  (Pl. Opp'n Mem. 6, 9.)

The Court declines to determine whether section 301 is applicable to these facts because the Court finds that Plaintiff has failed to allege facts that would support a finding that the exercise of general jurisdiction would comport with due process.  *See Daimler AG v. Bauman*, 571 U.S. ---, ---, 134 S. Ct. 746, 751 (2014) ("[A] court may assert jurisdiction over a foreign corporation 'to hear any and all claims against it' only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render it essentially at home in the forum State.'" (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. ---, ---, 131 S.Ct. 2846, 2851 (2011)).  Plaintiff has not alleged that Movants are headquartered in New York or incorporated in New York, that Movants maintain their principal place of business in New York, or that Movants' activities in New York, as compared to the corporation's global activities, would otherwise indicate that Movants are "at home" in New York State.  *See Sonera Holding*, 750 F.3d at 225 ("The paradigm forum for general jurisdiction over an individual is the individual's domicile, his home.  For a corporation, it is an equivalent place, with the place of incorporation and the principal place of business being the paradigm bases."); *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) ("[A] corporation may nonetheless be subject to general jurisdiction in a state only where its contacts are so 'continuous and systematic,' judged against the corporation's national and global activities, that it is 'essentially at home' in that state." (quoting *Daimler*, 571 U.S. at ---, 134 S. Ct. at 761–62)).

### iii.  Specific jurisdiction

Under New York law, a court may also exercise jurisdiction over a foreign defendant "as to a cause of action arising from" certain acts, as enumerated in its "long-arm" statute.  *See* N.Y. C.P.L.R. § 302.  Movants argue that specific jurisdiction is inappropriate under New York's

long-arm statute because Riri SA's forum-related contacts do not give rise to this dispute. (Def. Mem. 10.) Movants argue that (1) Plaintiff does not allege that Movants committed any tortious act, making section 301(a)(2) and (a)(3) inapplicable to the instant action;[8] (2) Movants do not own, use, or possess any real property in New York State, making section 302(a)(4) inapplicable; and (3) Movants do not "transact business" in the state within the meaning of the rule, making section 302(a)(1) inapplicable. (Def. Mem. 10–12.) Plaintiff argues that Riri USA and Howell are "agents" or "mere departments" of Riri SA, and that Riri SA transacts business through the subsidiary. (Pl. Opp'n Mem. 6, 9–11.) Plaintiff further contends that jurisdiction is appropriate in part because Riri SA had some control over the decision to terminate Plaintiff. (Pl. Opp'n Mem. 10.) Though Plaintiff refers to jurisdiction under New York's long-arm statute generally, without citing to any specific statutory provision, (SAC ¶ 19), the Court finds that the exercise of personal jurisdiction is appropriate pursuant to section 302(a)(1) of New York's CPLR.

### 1. New York state law, CPLR section 302(a)(1)

The New York long-arm statute provides in relevant part that:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state . . . .

N.Y. C.P.L.R. § 302(a)(1). The statute has two prongs: (1) the defendant must "transact [] business" within the state, either itself or through an agent, and (2) the cause of action must "arise from" that business activity. *Licci IV*, 732 F.3d at 168; *Best Van Lines*, 490 F.3d at 246–47; *Moore v. Publicis Group SA*, No. 11-CV-1279, 2012 WL 6082454, at *7–8 (S.D.N.Y. 2012)

---

[8] Although Movants argue this point in passing, neither side has briefed the issue of whether Plaintiff's allegations of employment discrimination could satisfy the tortious act requirement of section 302(a)(2). The Court therefore does not address this argument.

(citing *Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006))

(finding that plaintiff presented sufficient evidence to support exercise of jurisdiction, pursuant

to N.Y. C.P.L.R. § 302(a)(1), over foreign parent corporation of plaintiff's direct employer in

employment discrimination action).  Under New York state law, the fact that a defendant was not

physically present in the state is not dispositive, "so long as the defendant's activities here were

purposeful and there is a substantial relationship between the transaction and the claim asserted."

*Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 (2007) (quoting *Deustche Bank Sec., Inc. v. Mont. Bd.*

*of Invs.*, 7 N.Y.3d 65, 71 (2006)) (internal quotation marks omitted); *see also Licci II*, 673 F.3d

at 61 ("A defendant need not physically enter New York State in order to transact business, "so

long as the defendant's activities here were purposeful." (quoting *Fischbarg*, 9 N.Y.3d at 380));

*C. Mahendra (NY) LLC v. Nat. Gold & Diamond Ctr., Inc.*, --- N.Y.S.2d ---, ---, 2015 WL

520715, at *3 (App. Div. Feb. 10, 2015) ("The statute applies where the defendant's New York

activities were purposeful and substantially related to the claim." (citations omitted)).

   In determining whether a defendant is purposefully transacting business in the state, the

court must look at "the quality of the defendant['s] New York contacts."  *Fischbarg*, 9 N.Y.3d at

381; *Best Van Lines*, 409 F.3d at 246 ("Courts look to the totality of the defendant's activities

within the forum to determine whether a defendant has transacted business in such a way that it

constitutes purposeful activity satisfying the first part of the test." (internal quotation marks,

citations and alterations omitted)); *see also Licci IV*, 732 F.3d at 168 ("[W]hether a defendant

has purposefully availed itself of the New York forum is a fact-intensive inquiry inasmuch as it

requires the trial court . . . 'to closely examine the defendant's contacts for their quality.'"

(quoting *Licci v. Lebanese Canadian Bank* (*Licci III*), 20 N.Y.3d 327, 338 (2012))); *Licci II*, 673

F.3d at 62 (noting that a single act or "an ongoing course of conduct or relationship in the state

may" suffice to establish jurisdiction); *C. Mahendra*, --- N.Y.S.2d at ---, 2015 WL 520715, at \*3 ("[T]he 'quality of defendant's contacts' is the primary consideration in deciding the question of long-arm jurisdiction." (quoting *Fischbarg*, 9 N.Y.3d at 380–81)).  A plaintiff attempting to establish personal jurisdiction over a defendant who has never been present in the state and only acted through subsidiaries or agents need only show that the subsidiary "engaged in purposeful activities in this State," that those activities were "for the benefit of and with the knowledge and consent of" the defendant, and that the defendant "exercised some control over" the subsidiary in the matter that is the subject of the lawsuit.  *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988); *see also CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 366 (2d Cir. 1986) ("To be considered an agent for jurisdictional purposes, the alleged agent must have acted in the state 'for the benefit of, and with the knowledge and consent of' the non-resident principal." (citations omitted)); *Pfizer Inc. v. Perrigo Co.*, 903 F. Supp. 14, 16 (S.D.N.Y. 1995) ("[A] foreign corporation can sell goods and perform other activities in New York through its subsidiaries, subjecting the parent corporation to personal jurisdiction in New York." (citations omitted)). "Plaintiff need not establish a formal agency relationship between defendants and [the agent doing business in New York.]"  *Kreutter*, 72 N.Y.2d at 467.  In sum, "[p]ersonal jurisdiction over a parent corporation whose subsidiary has transacted business in New York exists when the nondomiciliary parent corporation knew of and consented to the acts of its in-state subsidiary that gave rise to the cause of action, and 'exercised some control over [the subsidiary] in the matter.'"  *EFCO Corp. v. Nortek, Inc.*, 205 F.3d 1322, 2000 WL 254047, at \*1 (2d Cir. 2000) (unpublished table decision) (alteration in original) (quoting *Kreutter*, 72 N.Y.2d at 467).

The "arising from" prong of section 302(a)(1) does not require a causal link, but rather requires "a relatedness between the transaction and the legal claim such that the latter is not

completely unmoored from the former . . . ." *Licci IV*, 732 F.3d at 168 (quoting *Licci III*, 20 N.Y.3d at 339); *see also Moore*, 2012 WL 6082454, at *8 ("[The p]laintiff's claim for discriminatory pay and hiring arose directly from [the parent corporation's] hiring and salary freeze and exceptions thereto, such that [the parent corporation] had 'fair warning . . . of the possibility of being haled into court.'" (alterations in original) (quoting *Avecmedia, Inc. v. Gottschalk*, No. 03-CV-7831, 2004 WL 1586411, at *4 (S.D.N.Y. Jul. 14, 2004))).[9] A plaintiff must show that there is a "substantial relationship" or "articulable nexus" between the claim asserted and the actions in New York. *Best Van Lines*, 490 F.3d at 246; *Licci III*, 20 N.Y.3d at 339. "[W]here at least one element [of the cause of action pleaded] arises from the New York contacts, the relationship between the business transaction and the claim asserted" supports a finding of jurisdiction under the statute. *Licci III*, 20 N.Y.3d at 341.

Riri SA has transacted business in New York through its wholly-owned subsidiary Riri USA, which was "formed to act as Riri SA's sales and distribution representative in the United States." (Moretta Decl. ¶ 6.) Riri USA's sales and distribution in New York are for the benefit of Riri SA, and are done with the ongoing knowledge of, and at least to some extent at the direction of, Riri SA. (*See* Moretta Decl. ¶¶ 6, 21; Howell Aff. ¶¶ 9–11, 14; Howell Dep. 69:20–70:10.) *Cf. Kreutter*, 71 N.Y.2d at 467 (To establish an "agency" relationship for the purposes of the long-arm statute, "[plaintiff] need only convince the court that [the subsidiary] engaged in purposeful activities in this State in relation to his transaction for the benefit of and with the knowledge and consent of the [out-of-state] defendants and that they exercised some control over

---

[9] Language used by New York state courts in evaluating personal jurisdiction under the long-arm statute frequently mirrors that used to evaluate whether the exercise of personal jurisdiction comports with due process. *See Best Van Lines, Inc. v. Walker*, 409 F.3d 239, 242 (2d Cir. 2007).

[the subsidiary] in the matter.")  Riri USA employs individuals in New York to further its business, namely, the sales and distribution of Riri SA's products in New York and the rest of the United States.  Plaintiff was one of those individuals employed.  Furthermore, Plaintiff's termination was implemented with the knowledge and consent, and even at the direction, of Movants.  *See EFCO Corp.*, 205 F.3d at 1322; *Pfizer*, 903 F. Supp. at 16 ("[The defendant] exercises sufficient control over its subsidiaries for the New York activities of those subsidiaries to subject [the defendant] to personal jurisdiction with respect to the claims asserted in this case.").  By Movants' own account, on which the Court passes no judgment as to its factual veracity, Plaintiff's termination itself was for the benefit of Riri SA's business.  The Court finds that Riri SA has engaged in sufficient purposeful activity in the state to conclude that it has "transacted business" for the purposes of section 302(a)(1).[10]

Furthermore, this cause of action "arises from" Riri SA's transaction of business through Riri USA.  By all accounts, Cerni, then-CEO of Riri SA, directed Howell to terminate Plaintiff's employment.  (SAC ¶ 30; Cerni Aff. ¶¶ 9–13; Howell Aff. ¶¶ 20–21.)  Plaintiff argues that this was due to her pregnancy and decision to start a family.  (SAC ¶ 43.)  Defendants argue that this was due to an economic downturn and Riri SA's decision that Riri USA had to "share in the pain" of the downturn.  (Howell Aff. ¶¶ 10–11; Cerni Aff. ¶¶ 9–10.)  Both accounts of Plaintiff's termination show that Riri SA had at least some control over Riri USA and Howell in the

---

[10]  Movants argue that Riri USA is not an "agent" or "mere department" of Riri SA sufficient to establish jurisdiction over Riri SA, because jurisdiction over a foreign, parent corporation is only appropriate when the activities of the parent corporation show disregard for the corporate form and independence of the corporate subsidiary.  (Def. Mem. 13 (citing *Volkswagenwrk v. Aktiengesell-Schaf v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984)); Def. Reply. Mem. 5–10.)  However, Movants' argument focuses on the scope of general jurisdiction pursuant to section 301, not the propriety of specific jurisdiction pursuant to section 302(a)(1).  The Court is not persuaded by Movants' argument as applied to section 302(a)(1).

decision to terminate Plaintiff, which decision gives rise to the instant action. Riri SA reached

into New York to direct Plaintiff's termination, and Riri SA thus should have had fair warning of

the possibility of being haled into court in New York. *Moore*, 2012 WL 6082454, at *9–10.

Plaintiff has made a *prima facie* case, supported by facts in the record, sufficient to

establish that the exercise of specific personal jurisdiction over Riri SA would be appropriate.

### 2.    Due process

Movants argue that the exercise of personal jurisdiction over Riri SA offends due

process, because Riri SA does not have sufficient minimum contacts with New York. (Def.

Mem. 18.) Movants argue that Riri SA's "actions and organizational structure signify a clear

intent ***not*** to avail itself of the benefits and protections of New York law." (*Id.* (emphasis in

original)) Further, Movants argue that the exercise of personal jurisdiction would be

unreasonable and inconvenient for Riri SA, a Swiss Corporation. (Def. Mem. 20; Def. Reply

Mem. 10–12.)

"Due process considerations require that the defendant 'have certain minimum contacts

[with the forum state] such that the maintenance of the suit does not offend traditional notions of

fair play and substantial justice.'" *Licci IV*, 732 F.3d at 169 (citing *Int'l Shoe*, 326 U.S. at 316).

When a claim "arises out of or relates to a defendant's contacts with the forum state," then the

"minimum contacts" showing is met if the plaintiff can show that the defendant "purposefully

availed itself of the privilege of doing business in the forum and could foresee being haled into

court there." *Id.* (internal quotation marks and citation omitted); *Best Van Lines*, 490 F.3d at

242–43. Moreover, even if a plaintiff can demonstrate that a defendant purposefully availed

itself of the forum state, plaintiff also must show that the exercise of jurisdiction is "reasonable"

under the Due Process Clause, i.e. it does not "offend traditional notions of fair play and

substantial justice." *Chloé v. Queen Bee of Beverly Hills*, 616 F.3d 158, 172–73 (2d Cir. 2010)

(quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987)) (internal quotation

marks omitted.)  In determining the reasonableness of an exercise of jurisdiction:

> A court must consider [1] the burden on the defendant, [2] the
> interests of the forum State, and [3] the plaintiff's interest in
> obtaining relief. It must also weigh in its determination [4] the
> interstate judicial system's interest in obtaining the most efficient
> resolution of controversies; and [5] the shared interest of the
> several States in furthering fundamental substantive social policies.

*Id.* (quoting *Asahi*, 480 U.S. at 113.)

Riri SA has purposefully availed itself of the New York forum, establishing a United

States-based subsidiary with its principal place of business in New York, (Moretta Decl. ¶¶ 6, 17,

21, 24), soliciting business through that subsidiary, (Moretta Decl. ¶¶ 6, 21), and otherwise

maintaining a substantial and continuing relationship with the New York office of Riri USA,

(Moretta Decl. ¶ 21; SAC ¶¶ 22, 26).  *See Chloé*, 616 F.3d at 171–72.  Because the single

employer doctrine under Title VII applies to the relationship between Riri SA and Riri USA,

*Ingenito*, 2013 WL 752201, at *4, and Riri SA may otherwise be responsible for any harm

committed in violation of New York State law, and because the allegations against Riri SA and

Riri USA are based on the same set of facts, the second through fifth factors weigh in favor of

adjudicating this matter in New York.  As for the burden on Movants, though Movants and some

potential witnesses are located in Switzerland, Movants have had prior notice of Plaintiff's

claims and Riri SA and Cerni have even participated in the litigation at the summary judgment

stage.  Furthermore, with the wealth of technology available to facilitate the proceedings, the

burden should be minimal.  The exercise of personal jurisdiction over Movants as to Plaintiff's

Title VII and NYSHRL claims comports with due process.

### c. Failure to state a claim

In the alternative, Movants move to dismiss the Second Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that (1) Plaintiff's Title VII claim against Riri SA and Riri Group must be dismissed because Plaintiff failed to name Riri SA and Riri Group in her EEOC charge, (Def Mem. 20–22), and (2) that Plaintiff's NYSHRL claims must be dismissed as to Riri SA because the claims are time-barred, (Def. Mem. 22–24).

### i. Administrative exhaustion

Movants argue that Plaintiff has failed to exhaust her administrative remedies as to Riri SA because she did not file a charge of discrimination with the EEOC or New York State Division of Human Rights ("NYSDHR") naming Riri SA as a respondent. (Def. Mem. 21.) Movants contend that the limited "identity of interest" exception to the exhaustion requirement, recognized by the Second Circuit, does not apply to Riri SA. (*Id.*) Movants argue that (1) Riri SA could have easily been ascertained as a respondent at the time the charge was filed, (2) Riri SA and Riri USA do not have similar interest in terms of conciliation, because Riri SA could assert it was not subject to personal jurisdiction and Riri USA could not, (3) Riri SA has been prejudiced by the failure to name it because it could have "extricat[ed] itself from the case at an early stage," and was otherwise not a party to the action during discovery, and (4) Riri SA has never represented to Plaintiff that it has a relationship with her through Riri USA. (Def. Mem. 21–22.)

Under Title VII, a complainant must "exhaust" her administrative remedies by filing a complaint with the EEOC or an authorized state agency prior to the commencement of a Title VII action in federal court, and that complaint must name the defendant. *Hewitt v. N.Y.C. Dep't of Health & Mental Hygiene*, 535 F. App'x 44, 45 (2d Cir. 2013) (summary order) (citing 42

U.S.C. § 2000e–5(e) and *Francis v. City of New York*, 235 F.3d 763, 766–67 (2d Cir. 2000));

*Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991) (citing 42 U.S.C. § 2000e-5(e)). A plaintiff

must also exhaust administrative remedies by filing a charge of discrimination with the

equivalent state agency, here, the NYSDHR. *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69

(2d Cir. 2006) ("Before an individual may bring a Title VII suit in federal court, the claims

forming the basis of such a suit must first be presented in a complaint to the EEOC or the

equivalent state agency."); *Williams v. Woodhull Med. & Mental Health Ctr.*, 891 F. Supp. 2d

301, 325 (E.D.N.Y. 2012) (same); *Chin-McKenzie v. Continuum Health Partners*, 876 F. Supp.

2d 270, 280 (S.D.N.Y. 2012) (same). However, the Second Circuit recognizes an exception to

the general rule, permitting a Title VII action against a party unnamed in the administrative

complaint if there is an "identity of interest" between the unnamed party and the party named in

the administrative complaint, provided the unnamed party had notice that its conduct was being

investigated. *Carcasole-Lacal v. Am. Airlines, Inc.*, No. 04-CV-5082, 2005 WL 1587303, at *1

(2d Cir. Jul. 7, 2005) (noting the identity of interest test is a "recognized exception"); *see also*

*Harris v. NYU Langone Med. Ctr.,* No. 12-CV-0454, 2013 WL 3487032, at *9 (S.D.N.Y. July 9,

2013) ("[B]ecause EEOC charges 'generally are filed by parties not versed in the vagaries of

Title VII and its jurisdictional and pleading requirements, [the Second Circuit] [has] recognized

an 'identity of interest' exception' to the rule requiring plaintiffs to properly exhaust their

claims." (quoting *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619–20 (2d Cir. 1999)) *report and*

*recommendation adopted as modified*, No. 12-CV-0454, 2013 WL 5425336 (S.D.N.Y. Sept. 27,

2013). In determining whether a plaintiff has properly exhausted administrative remedies, the

Second Circuit has adopted a "flexible stance . . . so as not to frustrate Title VII's remedial

goals." *Johnson*, 931 F.2d at 209 (internal quotation marks and citations omitted). To determine whether an "identity of interest" exists, the court must consider four factors:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Vital*, 168 F.3d at 619 (quoting *Johnson*, 931 F.2d at 209–10) (alterations in original).

As to the first factor, it is possible that Riri SA could have been ascertained as a relevant party at the time the EEOC complaint was filed. However, this fact alone is not dispositive. *See Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1242 (2d Cir. 1995) (Though "it is arguable that [plaintiff] could easily have included [the parent corporation] in the EEOC charge[,] factors two and three strongly favor allowing her to name [the parent corporation] as a party defendant in the instant suit.") The other three factors weigh in favor of permitting Plaintiff to continue this action against Riri SA. Riri SA argues that it does not have similar interests to Riri USA, and that its absence from the EEOC proceedings prejudiced Riri SA, because Riri SA was "precluded from participating in conciliation and extricating itself from the case at an early stage" and because Riri SA was "not a party to this case during the entire discovery period." (Def. Mem. 22.) As discussed above, Riri SA has made clear that Riri USA is its distributor and agent in the United States, and Plaintiff's connection to Riri SA is through Riri USA. The fact that Riri SA could have made the same arguments regarding personal jurisdiction that it makes in the instant motion at an earlier time is of no matter, as Riri SA now has the opportunity to make such arguments before this Court. Furthermore, the Court has already determined that Riri SA could

be liable to Plaintiff for Title VII and NYSHRL claims along with Riri USA under the single

employer doctrine, in part because Riri SA has been on notice of, and involved in, this litigation

from an early stage. *Ingenito*, 2013 WL 752201, at *7. This, in combination with the facts

above, is sufficient to find that Riri SA and Riri USA share an identity of interests. *See Cook*, 69

F.3d at 1242 (finding that a parent company of plaintiff's employer, which met the "single

employer" test under Title VII, fell within the "identity of interest" exception to the

administrative exhaustion requirement under Title VII although only the second and third factors

of the *Johnson* test were satisfied).

### ii. Statute of limitations

Movants argue that Plaintiff's NYSHRL as to Riri SA should be dismissed because the

claims are time-barred. (Def. Mem. 22.) Plaintiff was terminated on January 13, 2010, and

Movants contend that the three-year statute of limitations applicable to the NYSHRL claim

expired on January 13, 2013. Plaintiff's Revised Amended Complaint[11] was filed on April 18,

2013 which defendants contend was three months after the statute of limitations expired. (Def.

Mem. 22–23.) Movants further contend that the Revised Amended Complaint should not relate

back to the time the original Complaint was filed because, unlike the circumstances permitting

relation-back as set forth in Rule 15 of the Federal Rules of Civil Procedure, Plaintiff knew Riri

SA's identity at all times, and Plaintiff's failure to add Riri SA was not the result of a mistake of

law or fact concerning the proper party's identity. (Def. Mem. 23.)

The statute of limitations for a NYSHRL claim is three years. *See* N.Y. C.P.L.R.

§ 214(2); *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) ("[C]laims

---

[11] Plaintiff's initial Amended Complaint was filed on April 10, 2013, which named Riri SA and Riri Group as Defendants but failed to both amend the caption and to remove her dismissed and withdrawn claims.

under the NYSHRL . . . are time-barred unless filed within three years of the alleged

discriminatory acts . . . .").  Rule 15(c)(1)(A) of the Federal Rules of Civil Procedure allows an

amendment to a pleading to relate back to the date of the original pleading when the law that

provides the applicable statute of limitations allows relation back.  Fed. R. Civ. P. 15(c)(1)(A).

Courts must examine the "controlling *body* of limitations law," and apply state law if it provides

"a more forgiving principle of relation back than the one provided" by Rule 15(c).  *Hogan v.*

*Fischer*, 738 F.3d 509, 518 (2d Cir. 2013) (quoting Fed. R. Civ. P. 15, Advisory Comm. Notes

1991) (internal quotation marks omitted); *see also Amaya v. Garden City Irrigation, Inc.*, 645 F.

Supp. 2d 116, 121 (E.D.N.Y. 2009) (rejecting defendant's argument that more stringent relation-

back requirements of Rule 15(c) should apply where the underlying state law expressly provided

the applicable statute of limitations, and concluding that "it is of no moment that plaintiffs'

claims against [defendant] would not relate back under Rule 15(c)(1)(C). . . . [I]t matters only

whether those claims relate back under New York law").  "The Second Circuit has not decided

whether Rule 15(c)(1)(C) is more or less forgiving than New York's general relation back law,

[section] 203 of the CPLR.  Courts in this Circuit have either found [section] 203 to be more

forgiving or assessed both laws and applied the more forgiving of the two."  *Strada v. City of*

*New York*, No. 11-CV-5735, 2014 WL 3490306, at *6 n.5 (E.D.N.Y. July 11, 2014).

     Under New York law, claims against a new defendant

> relate back to timely filed pleadings when (1) the new claim arose
> out of the same conduct, transaction or occurrence as the original
> allegations; (2) the new party is united in interest with the original
> defendant, and by reason of that relationship can be charged with
> such notice of the institution of the action that he will not be
> prejudiced in maintaining his defense on the merits; and (3) the
> new party knew or should have known that, but for a mistake as to
> the identity of the proper parties, the action would have been
> brought against him as well.

*Id.* at *6 (quoting *JCG v. Ercole*, No. 11-CV-6844, 2014 WL 1630815, at *13 (S.D.N.Y. Apr. 24, 2014)) (internal quotation marks omitted) (collecting cases). "The 'linchpin' of the relation back doctrine is notice to the defendant within the applicable limitations period." *Id.* (quoting *Kirk ex rel. Kirk v. Univ. OB–GYN Assocs., Inc.*, 960 N.Y.S.2d 793, 795 (App. Div. 2013)) (internal quotation marks omitted).

Movants do not contest that Plaintiff's claims against Riri SA arise out of the same occurrence as her original allegations, meeting the first prong of the test. Furthermore, as discussed above and in the Court's February 27, 2013 Memorandum and Order, Plaintiff has shown that Riri SA and Riri USA are united in interest to the extent that Riri SA can be charged with notice of the institution of the action. Cerni, the former CEO of Riri SA, submitted a declaration in support of Riri USA's motion for summary judgment, which Movants refer to in support of the instant motion. (Docket Entry 32-3; Def. Mem. 3.) The record further reflects that Riri SA and Riri USA are sometimes treated as a single entity and are often collectively referred to as "Riri Group." (Moretta Decl. ¶ 5; Howell Aff. ¶ 3; *see* Howell Dep. 64:3–7, 72:11–13.) While a parent-subsidiary relationship alone may not satisfy the unity of interest prong, the facts in this case show "that the two companies, intentionally or not, often blurred the distinction between them." *See Donovan v. All-Weld Products Corp.*, 824 N.Y.S.2d 44, 45 (App. Div. 2006) (finding wholly-owned subsidiary acting as a distributor for parent corporation was united in interest for the purposes of relation-back). As to the third prong, whether the omission in the original complaint was due to a mistake, the key inquiry is whether a plaintiff acted intentionally in omitting the defendant in the original pleading. *Amaya*, 645 F. Supp. 2d at 124 (quoting *Buran v. Coupal*, 87 N.Y.2d 173, 181 (1995))). Movants argue that Plaintiff made a tactical decision in omitting Movants from the original Complaint. (Def. Mem. 23–24.) In her

opposition, Plaintiff offers no argument as to why her omission of Riri SA from the original Complaint was a mistake, but there is no indication that the omission was intentional or strategic in any way.

Furthermore, Movants' argument does not take into consideration that the statute of limitations as to the NYSHRL may have been tolled during the pendency of any EEOC proceedings. While the Second Circuit has not yet taken a "definitive stance on whether the statute of limitations for NY[S]HRL claims is tolled while a plaintiff's charge is pending before the EEOC . . . . [n]umerous district courts in the Circuit have [] allowed for such tolling." *Senecal v. B.G. Lenders Serv. LLC*, 976 F. Supp. 2d 199, 229 (N.D.N.Y. 2013) (collecting cases); *see also Sloth v. Constellation Brands, Inc.*, 883 F. Supp. 2d 359, 373 (W.D.N.Y. 2012) ("The three year limitations period [under NYSHRL], . . . is tolled for the period between the filing of an EEOC charge and the issuance by the EEOC of a right-to-sue letter." (internal quotation marks omitted) (citing *DeNigris v. N.Y.C. Health & Hosps. Corp.*, 861 F. Supp. 2d 185, 192 (S.D.N.Y. Mar. 9, 2012)); *Sloth*, 883 F. Supp. 2d at 373 n.5 ("While some state law claims, such as tort claims, may not be tolled by the filing of an EEOC complaint, . . . by statute, state Human Rights law claims are tolled by the filing of an administrative complaint with the New York State Division of Human Rights, and courts in this Circuit have extended the tolling period to administrative complaints filed with the EEOC." (internal citations omitted)); *Sundaram v. Brookhaven Nat. Labs.*, 424 F. Supp. 2d 545, 565 (E.D.N.Y. 2006) ("Because complaints filed with the EEOC are deemed constructively to be cross-filed with the NYDHR, the statute is also tolled during the pendency of a claim filed with the EEOC." (citations omitted)).

Plaintiff received her right-to-sue notice from the EEOC, dated October 21, 2010. (SAC ¶ 60.) This suggests that Plaintiff had a charge pending with the EEOC for some amount of time before she commenced the instant action, though it is not clear from her Second Amended Complaint how long the EEOC charge was pending. Thus, the Court does not have sufficient information at this stage to determine whether Plaintiff's NYSHRL claim is untimely.[12] *See N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 230 (2d Cir. 2014) ("Because a statute of limitations is an affirmative defense, [the defendant] bears the burden of proof to show it bars the claims." (citing *Overall v. Estate of Klotz,* 52 F.3d 398, 403 (2d Cir. 1995) and *Yankee Gas Servs. Co. v. UGI Utils, Inc.*, 616 F.Supp.2d 228, 269 (D. Conn. 2009))). Movants have not shown that the Court can make a determination as to whether the statute of limitations has expired regarding Plaintiff's NYSHRL claim and whether tolling is applicable. Thus,

---

[12] The documents submitted in support of the motion for summary judgment indicate that Plaintiff's EEOC charge was signed on or about June 17, 2010, and received by the EEOC New York District Office on July 22, 2010. In her discrimination charge, Plaintiff lists the NYSDHR as the applicable state or local agency for her claim. (*See* Exhibit K to Certification of David Strand in Support of Defendants' Motion for Summary Judgment.) Plaintiff requested and received a notice of right to sue from the EEOC on October 21, 2010. Thus, the Court notes that her charge of discrimination was pending before the EEOC for 91 days. If tolled for that period of time, the statute of limitations to file this action would have expired on April 14, 2013.

Even if the Revised Amended Complaint did not relate back to Plaintiff's original Complaint, the Revised Amended Complaint does relate back to the Amended Complaint, which was filed on April 10, 2013, within the statute of limitations period as tolled during the pendency of the EEOC filing. Plaintiff based her allegations on the same conduct outlined in her original Complaint, specifically named Riri SA and Riri Group in the Amended Complaint (though she did not add them to the caption in the Amended Complaint), and otherwise clearly intended to add Riri SA as a Defendant. (*See* Docket Entry No. 39.) The failure to amend the caption and remove allegations relating to withdrawn claims is a "mistake" as contemplated by relation-back law. *See Amaya v. Garden City Irrigation, Inc.*, 645 F. Supp. 2d 116, 121 (E.D.N.Y. 2009) (noting the key inquiry is whether omission of defendants was intentional). Thus, taking into account the time the statute of limitations was tolled while Plaintiff's EEOC charge was pending, Plaintiff's action against Riri SA is timely. Furthermore, Plaintiff did seek leave to amend well within the statute of limitations period, on August 23, 2012. (Minute Entry dated August 23, 2012.) The Court delayed granting leave to amend until February 27, 2013.

Movants have failed to establish a basis for their motion to dismiss on statute of limitations grounds.

## IV. Conclusion

For the foregoing reasons, the Court grants the motion to dismiss for lack of jurisdiction as to Riri Group, and denies the motions to dismiss for lack of personal jurisdiction and for failure to state a claim as to Riri SA.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated:  March 3, 2015
        Brooklyn, New York