UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------
LOREDANA INGENITO,

                               Plaintiff,                     **MEMORANDUM & ORDER**
                                                                        11-CV-2569 (MKB) (RLM)
                 v.

RIRI USA, INC., BENJAMIN HOWELL II and
RIRI SA,

                               Defendants.
-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiff Loredana Ingenito brings the above-captioned action against Riri USA, Inc. ("Riri USA"), Benjamin Howell, II and parent company of Riri USA, Riri SA.[1] Plaintiff asserts federal and state law claims for pregnancy discrimination.[2] By Memorandum and Order dated February 23, 2013, the Court granted in part and denied in part Defendants' motion for summary judgment.[3] Plaintiff's remaining claims are pregnancy discrimination under a disparate treatment theory pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Pregnancy Act of 1978, and pregnancy discrimination pursuant to the New York State

---

   [1] Plaintiff commenced the action in the Supreme Court of the State of New York, County of Queens against Defendants Riri USA and Howell. Riri USA and Howell removed the action to this Court on May 27, 2011.

   [2] On August 23, 2012, at oral argument for Defendants' summary judgment motion, Plaintiff withdrew her claims pursuant to the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, the Family and Medical Leave Act of 1993, the Due Process Clause of the United States Constitution and her intentional infliction of emotional distress claim pursuant to New York state law. (Aug. 23, 2012 Min. Entry; Oral Arg. Tr. 26:19–29:4.)

   [3] The Court also granted Plaintiff leave to amend the Complaint to add Riri SA as a defendant.

Human Rights Law ("NYSHRL").[4] On April 10, 2013, Plaintiff filed an Amended Complaint and on April 18, 2013, Plaintiff filed a revised Amended Complaint, removing the dismissed and withdrawn claims.

Currently before the Court is Plaintiff's appeal of Magistrate Judge Roanne L. Mann's September 21, 2015 Order denying Plaintiff's motion to compel discovery, issued orally after she heard argument on Plaintiff's motion. On October 5, 2015, Plaintiff moved for a review of Judge Mann's September 21, 2015 Order, and appealed the order in accordance with Rule 72(a) of the Federal Rules of Civil Procedure. (Pl. Disc. Appeal Mot. ("Pl. Appeal"), Docket Entry No. 90.) Plaintiff requests that the Court set aside or modify Judge Mann's September 21, 2015 Order. (*Id*. at 2.) On October 16, 2015, Riri SA opposed Plaintiff's appeal. For the reasons set forth below, the Court affirms Judge Mann's Order.

**I. Background**

Plaintiff alleges that her former employer, Riri USA, terminated her due to her pregnancy and that Defendants did not have a legitimate, nondiscriminatory reason to terminate her employment. (Am. Compl. ¶¶ 27–29, 38.) Plaintiff alleges that she informed Howell of her pregnancy on or about December 3, 2009. (*Id*. ¶ 22.) Howell recalls that Plaintiff told him of her pregnancy on December 10, 2009. (Def. 56.1 ¶¶ 42–44.) Plaintiff's separation agreement is dated January 13, 2010, but at the bottom of the agreement, there appears to be a document "creation date" of December 10, 2009. (Separation Agreement, annexed to Carr Aff. in Opp'n as

---

[4] The Court granted Howell's motion for summary judgment on all of Plaintiff's Title VII claims and denied Howell summary judgment on Plaintiff's NYSHRL claim. The Court granted Riri USA's motion for summary judgment as to Plaintiff's Title VII disparate impact claim but denied summary judgment as to Plaintiff's Title VII disparate treatment and NYSHRL claims.

Ex. 3, Docket Entry No. 33.)

### a. Defendants' voluntary production of privileged attorney-client emails

On August 31, 2015, after the close of discovery, Riri SA produced to Plaintiff two emails between Howell and Ted Rosen, who was one of Riri USA's attorneys at the time of Plaintiff's termination (the "Initial Production"). (Pl. Disc. Mot. 1,[5] Docket Entry No. 83.) The first email is part of a chain of exchanges between Howell and Rosen. At 7:16 PM on December 10, 2009, (the "December 10, 2009 Email"), Howell responds to an email sent by Rosen earlier that day, in which Rosen had requested that Howell "consider an effective date" and appeared to have attached a draft separation agreement for Plaintiff. (*Id*. at 5.) Responding to Rosen, Howell states, "On my way out the door tonight Lori broke the news that she is pregnant. Does that effect [sic] things??" (*Id.*)

The second email produced by Defendants is a December 14, 2009 email from Howell to Rosen, (the "December 14, 2009 Email"), in which Howell follows up about the December 10, 2009 Email and indicates that he has not received a reply from Rosen. (*Id*. at 7.) Howell asks whether "Lori being pregnant complicate[s] things?," and he states to Rosen that "[b]efore finding out she was pregnant [we] had the phone conversation and then I sent you the email with Lori's specifics and you wrote up the separation agreement. So we have documentation that we had planned to let Lori go prior to my finding out she was pregnant." (*Id*.)

On September 2, 2015, in response to Defendants' Initial Production, Plaintiff sent a letter to Defendants' counsel demanding "all emails between Benjamin Howell and any attorney . . . including but not limited to Ted Rosen, related in any manner whatsoever to the

---

[5] Because Plaintiff's discovery motion is not consecutively paginated, all citations to pages refer to the page numbers assigned by the Court's Electronic Document Filing System.

employment of [P]laintiff or to this case." (*Id*. at 9.) Plaintiff argued that the voluntary disclosure of the December 10, 2009 and December 14, 2009 Emails "constituted a waiver of the attorney-client privilege." (*Id*.)

### b. Defendants' supplemental email production

By letter dated September 16, 2015, Riri SA responded to Plaintiff's counsel, stating that any waiver of attorney-client privilege triggered by the voluntary disclosure of the December 10, 2009 Email and the December 14, 2009 Email was subject matter limited and "solely related to . . . when in fact Mr. Howell was informed about Plaintiff's pregnancy." (Ltr. dated Sept. 16, 2015, at 1, annexed to Defs. Opp'n to Pl. Disc. Mot. ("Defs. Opp'n") as Ex. 1, Docket Entry No. 86.) In their response, Defendants represented that the Initial Production constituted "all emails" between Riri USA employees and Fox Rothschild attorneys regarding the timing of Howell learning of Plaintiff's pregnancy. (*Id*.)

Although Riri SA opposed Plaintiff's claim that Defendants waived attorney-client privilege as to all communication regarding Plaintiff's employment, and "without conceding any further waiver of attorney-client privilege," it produced "all emails in our possession between Riri USA and [Fox Rothschild] regarding the issue of [] Plaintiff's termination from Riri USA" (the "Supplemental Production"). (*Id*. at 2.) The first email in the Supplemental Production is a December 9, 2009 email from Howell to Rosen (the "December 9, 2009 Email"), in which Howell sends an email to Rosen regarding a separation agreement used in the termination of a prior employee and provides information to Rosen regarding Plaintiff's employment, including her title, salary and duration of employment. (Dec. 9, 2009 Email 3, annexed to Defs. Opp'n as Ex. 1.) The underlying email, which Howell forwards to Rosen with the December 9, 2009 Email, appears to attach the previously-used separation agreement. (*Id*.)

4

The Supplemental Production also includes a December 14, 2009, email in which Rosen replies to Howell's December 14, 2009 Email, that was part of the Initial Production, (the "Rosen December 14, 2009 Email").[6] Rosen replies and briefly explains the legal obligations of an employer when terminating a pregnant employee and the necessity to "document this employees [sic] performance issues thoroughly, to remove any appearance that her termination may be pregnancy discrimination." (*Id.* at 6.) Rosen advises Howell to document "objective, observable behaviors" related to Plaintiff's job performance and the financial issues motivating Howell's decision to terminate her. (*Id.*) Rosen notes that "[t]iming will be dependent on your documentation as you may need to better document her performance." (*Id.*)

The Supplemental Production also contains two emails dated December 16, 2009: (1) an email from Howell to Rosen, time stamped 1:14 PM, (the "Howell December 16, 2009 Email"), and (2) Rosen's response to Howell, time stamped 1:28 PM, (the "Rosen December 16, 2009 Email"). (*Id*. at 9.) In the Howell December 16, 2009 Email, Howell tells Rosen that terminating Plaintiff is "doable" because "this action was considered and decided upon way before we even knew she was pregnant and [we] have written documentation to prove it." (*Id*.) In the Rosen December 16, 2009 Email, Rosen responds to Howell and explains the costs related to litigation over allegations of terminating an employee because of her pregnancy. (*Id*.)

   c.  **Plaintiff's motion to compel**

On September 14, 2015, before receiving the Supplemental Production, Plaintiff moved before Judge Mann for an order: (1) to compel Defendants to produce "all emails between Mr. Howell and his attorneys related to [P]laintiff's employment with [Riri USA], her pregnancy and

---

[6] In the December 14, 2009 Email, Howell indicated he had not received a response from Rosen to his December 10, 2009 Email and wanted to know if Plaintiff's pregnancy complicated their plans to terminate Plaintiff. (Defs. Opp'n Ex. 1, at 6.)

termination;" (2) to direct Rosen to appear for a deposition as a fact witness "concerning his conversations with [Howell];" and (3) to disqualify Rosen's law firm, Fox Rothschild, LLP, from representing Riri SA in this litigation.[7]  (Pl. Disc. Mot. at 2, 3.)

Plaintiff argued that she is entitled to the relief requested because "where there is a partial disclosure of privileged material in the context of litigation for the benefit of the privilege holder, there may be a complete subject matter waiver as to all communications on the same subject," relying on *Brewer v. Hall*, No. 00-CV-6072, 2005 WL 2219304, at *2 (E.D.N.Y. Sept. 12, 2005).  (*Id.* at 2.)  After receiving the Supplemental Production, Plaintiff argued that there "still appear to be missing emails" from the communication between Howell and Rosen during the December 9, 2009 to December 14, 2009 period, (Pl. Disc. Reply 1, Docket Entry No. 87), and that Defendants' disclosures entitle her to "all emails between Mr. Rosen and Mr. Howell regarding the firing of Ms. Ingenito," (Sept. 21, 2015 Telephone Conf. Tr. ("Sept. 21, 2015 Tr.") 10, Docket Entry No. 94).  Plaintiff acknowledged that only the Supplemental Production references Howell's reasons for terminating Plaintiff but argues that, despite Riri SA's express statement that it was not waiving any attorney-client privilege with its Supplemental Production, Riri SA did waive all privilege regarding Plaintiff's termination, including Howell's reasons for the decision.  (*Id*. at 23–24, 27.)

With respect to her application to depose Rosen, Plaintiff argued that Rosen's advice to Howell to document Plaintiff's work performance, which advice was contained in the Rosen December 14, 2009 Email, waived attorney-client privilege as to Howell's reasons to terminate Plaintiff and rendered Rosen a fact witness as to Howell's communications on that subject.  (*Id.*

---

[7] Fox Rothschild LLP represents Riri SA in this litigation, not Howell or Riri USA. Rosen has not participated in the litigation as counsel to any Defendant.

6

at 10–12, 20–22.) Plaintiff argues that because Riri SA did not disclose any email from Howell in response to Rosen's queries and because, at his deposition, Howell stated he did not recall some details as to Plaintiff's performance, Plaintiff is entitled to depose Rosen about all communications, email or otherwise, about Howell's "legitimate reasons" for firing Plaintiff. (*Id*. at 12, 16, 29–30.)

### d. Defendants' response to Plaintiff's motion to compel

On September 18, 2015, Riri SA responded to Plaintiff's discovery motion and argued that the narrow scope of the subject matter waiver triggered by the Initial Production and the responsive contents of the Supplemental Production render Plaintiff's motion moot. (Defs. Opp'n 2.)

Riri SA argued that the "sole subject matter" of the waiver triggered by the production of the December 10, 2009 Email and the December 14, 2009 Email "was the *timing* of when in fact Mr. Howell was informed about Plaintiff's pregnancy, in relation to the decision to terminate her." (*Id.* at 1.) Riri SA further argued that the Supplemental Production "constitutes the *complete* set of emails and other documents on the pre-litigation topics of Plaintiff's termination, pregnancy, and the timing of [those events]." (*Id.*) Riri SA argued that these documents were provided with the express caveat that the Supplemental Production did not broaden the waiver of privilege and that the Supplemental Production "wasn't voluntarily waived" but "was produced in a good faith effort to resolve the dispute" with Plaintiff. (Sept. 21, 2015 Tr. 15–16, 25.)

With respect to Plaintiff's request to depose Rosen, Riri SA argued that the topic at issue was "solely the mindset of the decision maker and alleged discriminator," Howell, and the timing of his knowledge of Plaintiff's pregnancy "in relation to his decision to terminate her employment" and that Rosen is not a fact witness because he was "simply the recipient of

7

emails" regarding this issue. (Defs. Opp'n 2.) Riri also argued that, at his deposition, Howell provided relevant details regarding the financial motivations for Plaintiff's termination, eliminating Plaintiff's stated need to depose Rosen as to Howell's reasons for the termination. (Sept. 21, 2015 Tr. 14.) With respect to the disqualification of Fox Rothschild, Riri SA argued that the request was without merit because Rosen is not a fact witness and Plaintiff failed to demonstrate the likelihood of prejudice to Rosen's client. (Defs. Opp'n 2.)

### e. September 21, 2015 hearing and Judge Mann's decision

On September 21, 2015, Judge Mann heard oral argument on Plaintiff's motion to compel and denied Plaintiff's motion.

As to the scope of the subject matter waiver, Judge Mann explained that "[d]espite the fact that the waiver is a subject matter waiver, [P]laintiff has moved to compel all communications between counsel and Mr. Howell with respect to [P]laintiff," instead of limiting her request to the relevant subject matter. (Sept. 21, 2015 Tr. 4.) Judge Mann determined that "there was a selective waiver in order to establish the timing of the decision to terminate [Plaintiff]," (*id.* at 28), and thus the scope of the subject matter waiver was "simply a question of timing" as to Plaintiff's termination, (*id.* at 21), and did not "extend[] to the actual underlying reasons for the termination," (*id.* at 31). Moreover, Judge Mann acknowledged that Rosen's references to Howell's legitimate reasons for terminating Plaintiff appeared only in the Supplemental Production "in connection with a motion to compel" and in an attempt "to moot the issue," rather than in the initial voluntary disclosure that is the source of the waiver. (*Id.* at 31.) As such, she determined that the waiver did not cover "all communications" between Howell and Rosen because the December 10, 2009 and December 14, 2009 Emails, the Initial Production, "[did] not in any way touch upon the reason for [Plaintiff's] termination." (*Id.*

8

at 21–22.)

As to the deposition of Rosen, Judge Mann denied Plaintiff's request because Plaintiff failed to cite to a "single case in support" of the request to depose Rosen and because depositions of counsel are "highly discouraged and rarely justified." (*Id*. at 17.) She determined that Plaintiff had not made a "sufficient showing . . . to warrant a deposition of the attorney" because Plaintiff had failed to "make any showing" in the motion as to "the need" to depose Rosen. (*Id*. at 28, 31.) Moreover, Judge Mann explained that the Rosen December 14, 2009 Email contained no actual discussion of Howell's reasons for terminating Plaintiff, "simply an attorney's question." (*Id*.) Judge Mann therefore determined that "the subject matter waiver is limited to the timing of when Mr. Howell decided to terminate [P]laintiff. It does not extend to any communications concerning what were the underlying reasons for the termination." (*Id*. at 32.) Judge Mann determined that she would "not allow" the requested deposition "simply so that that issue can be explored." (*Id*.)

In denying Plaintiff's motion to compel the disclosure of further emails and a deposition of counsel and to disqualify the law firm,[8] Judge Mann concluded:

> [D]efendants' disclosure of several attorney-client emails with respect to the timing of the decision to terminate [P]laintiff did not give rise to a waiver of the attorney-client privilege with respect to discussions concerning the underlying reasons of her termination. Furthermore, depositions of counsel are strongly disfavored.

(Sept. 21, 2015 Minute Entry ("September 21, 2015 Order"), Docket Entry No. 89.)

---

[8] Plaintiff does not address, and does not appear to appeal, Judge Mann's denial of Plaintiff's request to disqualify Fox Rothschild as counsel to Riri SA.

9

II. Discussion

    a. **Standard of review**

Under the Federal Magistrates Act, 28 U.S.C. § 636, and Rule 72 of the Federal Rules of Civil Procedure, "[a] magistrate judge is authorized 'to make findings as to non-dispositive pretrial matters, such as discovery matters, which may not be disturbed by a district judge absent a determination that such findings were clearly erroneous or contrary to law.'" *Ebo v. N.Y. Methodist Hosp.*, No. 12-CV-4432, 2015 WL 4078550, at *4 (E.D.N.Y. July 6, 2015) (alteration in original) (quoting *McNamee v. Clemens*, No. 09-CV-1647, 2014 WL 1338720, at *2 (E.D.N.Y. Apr. 2, 2014) (citing 28 U.S.C. § 636(b)(1))); *see also Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007)). An order is clearly erroneous if, based on all the evidence, a reviewing court "is left with the definite and firm conviction that a mistake has been committed." *In re Gordon*, 780 F.3d 156, 158 (2d Cir. 2015) (internal quotations omitted) (quoting *United States v. Murphy*, 703 F.3d 182, 188 (2d Cir. 2012)); *Ebo*, 2015 WL 4078550, at *4. "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Ebo*, 2015 WL 4078550, at *4 (internal quotation marks and citation omitted). Under this highly deferential standard, magistrate judges are "afforded broad discretion in resolving discovery disputes, and reversal is appropriate only if that discretion is abused." *McNamee*, 2014 WL 1338720, at *2 (first citing *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 524 (2d Cir. 1990); and then citing *United States v. Dist. Council*, 782 F. Supp. 920, 922 (S.D.N.Y. 1992)). Therefore, "a party seeking to overturn a discovery order [by a magistrate judge] bears a heavy burden." *Bachayeva v. Americare Certified Special Servs.*, No. 12-CV-1466, 2013 WL 4495672, at *1 (E.D.N.Y. Aug. 20, 2013) (quoting *Garcia v. Benjamin Grp. Enter. Inc.*, 800 F. Supp. 2d 399, 403 (E.D.N.Y. 2011)).

### b. Subject matter waiver of attorney-client privilege

Judge Mann determined that Defendants' waiver of attorney-client privilege is limited to the issue of the timing of Howell's decision to terminate Plaintiff in relation to when he learned of Plaintiff's pregnancy. On appeal, Plaintiff argues that Judge Mann failed to consider the content of the Supplemental Production in determining the scope of the subject matter waiver. (Pl. Appeal at 7–10.) According to Plaintiff, "it doesn't matter why the [D]efendants' attorneys voluntarily turned over the second set of emails," the disclosure is nevertheless the source of a subject matter waiver of attorney-client privilege because the Supplemental Production was "voluntary" and in response to Plaintiff's discovery demand, rather than her motion to compel. (*Id.* at 9.)

Riri SA responds that Plaintiff's application for further email disclosures is moot because Riri SA has disclosed all emails between Howell and Rosen that "Defendants could locate regarding the issues of Plaintiff's termination from Riri USA." (Defs. Opp'n to Pl. Appeal ("Defs. Appeal Opp'n") 4–5, Docket Entry No. 92.) Riri SA also argues that "[D]efendants selectively waived attorney-client privilege on the sole issue of the timing of the decision to terminate Plaintiff." (*Id.* at 7.) Riri SA reiterates that because the Supplemental Production was "produced . . . to moot out a discovery dispute," Judge Mann appropriately determined that "this was the full extent of the subject matter waiver." (*Id.* at 7.) Defendants further argue that extending the waiver to include any content regarding the reasons for Plaintiff's termination is "bootstrapping." (*Id.*)

The attorney-client privilege "enable[s] attorneys to give informed legal advice to clients" and "protects communications between a client and its attorney that are intended to be, and in fact were, kept confidential." *Schaeffler v. United States*, 806 F.3d 34, 40 (2d Cir. 2015);

*see also United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) (explaining that such communications must also be "for the purpose of obtaining or providing legal advice"). "In order to balance this protection of confidentiality with the competing value of public disclosure," courts apply the attorney-client privilege "only where necessary to achieve its purpose and construe the privilege narrowly because it renders relevant information undiscoverable." *Mejia*, 655 F.3d at 132 (internal quotation marks and citation omitted) (quoting *Fisher v. United States,* 425 U.S. 391, 403 (1976)).

Attorney-client privilege is waivable and "is generally waived by voluntary disclosure of the [privileged] communication to another party." *Schaeffler*, 806 F.3d at 40. Waiver can be made expressly or implicitly, and "may be implied in circumstances where it is called for in the interests of fairness." *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008). Waiver by implication commonly arises in specific contexts, including "when a client testifies concerning portions of the attorney-client communication" and "when a client asserts reliance on an attorney's advice as an element of a claim or defense." *In re Cty. of Erie*, 546 F.3d 222, 228 (2d Cir. 2008). In other words, a "party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party." *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000) (explaining that "fairness considerations arise when the party attempts to use [attorney-client] privilege both as a shield and a sword"); *see also Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. U.S. Dep't of Justice*, 697 F.3d 184, 208 (2d Cir. 2012) (When a party relies "on an otherwise privileged communication to assert a claim or defense . . . the party cannot invoke that relied-upon authority and then shield it from public view."); *In re von Bulow*, 828 F.2d 94, 102 (2d Cir. 1987) (The "considerations [that] underlie the fairness doctrine . . . aim

to prevent prejudice to a party and distortion of the judicial process . . . .").

To analyze "[w]hether fairness requires disclosure" in the context of an implicit waiver, courts decide the issue "on a case-by-case basis" and consider "primarily . . . the specific context in which the privilege is asserted." *In re Grand Jury Proceedings*, 219 F.3d at 183; *see also In re Sims*, 534 F.3d at 132 (same). The court should identify "the type of unfairness to the adversary that results in litigation circumstances when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion." *In re Cty. of Erie*, 546 F.3d at 229 (internal quotation marks omitted) (quoting *John Doe Co. v. United States*, 350 F.3d 299, 306 (2d Cir.), *as amended*, (Nov. 25, 2003)). In *Erie*, the Second Circuit found no implicit waiver because the relevant disclosure was not made before a "decisionmaker or fact finder" and thus the statements did not place the opponent "in a disadvantaged position at trial." *Id.*; *see also Mitre Sports Int'l Ltd. v. Home Box Office, Inc.*, 304 F.R.D. 369, 373 (S.D.N.Y. 2015) ("[T]he critical inquiry is whether protected information has been partially disclosed to a decision maker in an effort to influence a decision."). Thus, it is relevant "whether the privilege holder took affirmative steps to inject privileged materials into the litigation" and whether the disclosure was made with "a risk that some independent decisionmaker will accept the privilege-holder's representations without the adversary's having adequate opportunity to rebut them." *In re Sims*, 534 F.3d at 132 (internal quotation marks and alterations omitted) (quoting *John Doe Co.*, 350 F.3d at 305).

Where a court determines a party has implicitly waived attorney-client privilege, similar fairness considerations limit the scope of that waiver to the subject matter of the disclosed communication. *In re Grand Jury Proceedings*, 219 F.3d at 183 (limiting the scope of waiver "where disclosure occurred in a context that did not greatly prejudice the other party in the

litigation," where "the disclosure occurred early in the proceedings" and where the disclosure "was made to opposing counsel rather than to the court" (internal quotation marks and citations omitted)); *In re Sims*, 534 F.3d at 132 (explaining that a waiver would be made only "with respect to certain materials"); *Regeneron Pharm., Inc. v. Merus B.V.*, --- F. Supp. 3d. ---, ---, No. 14-CV-1650, 2015 WL 6674818, at *45 (S.D.N.Y. Nov. 2, 2015) ("As subject matter waiver seeks to readjust the essential unfairness in disclosing part, but not all, of an attorney-client communication . . . , the required remedy should be addressed to that particular unfairness." (internal citations omitted)).

Riri SA states that it produced the December 10, 2009 Email and the December 14, 2009 Email in its Initial Production to establish the timing of Howell's decision to terminate Plaintiff and concedes that, in so doing, it selectively waived attorney-client privilege as to that issue. (Defs. Appeal Opp'n 7.) Judge Mann determined that the Initial Production therefore triggered Riri SA's obligation to disclose all privileged communications regarding the timing of Plaintiff's termination. (Sept. 21, 2015 Tr. 28.) Such a waiver is exactly the type that fairness considerations require, as it prevents Defendants from using privileged materials to attempt to bolster their defense while preventing Plaintiff from countering the assertion by blocking "access to privileged material potentially capable of rebutting the assertion." *In re Cty. of Erie*, 546 F.3d at 229. According to Riri SA, it has produced all emails related to the timing of Plaintiff's termination. (Defs. Appeal Opp'n 4–5.)

Judge Mann also determined that the Supplemental Production did not broaden the waiver triggered by the Initial Production. (Sept. 21, 2015 Tr. 20–22.) Because the subject of the December 10, 2009 and December 14, 2009 Emails "do not in any way touch upon the *reason* for [Plaintiff's] termination," she found that the waiver is limited to the timing of

Plaintiff's termination. (*Id*. (emphasis added).) Judge Mann determined, contrary to Plaintiff's claim, that Defendants' obligation to make further related disclosures did not reach all communications between Howell and Rosen or "the actual underlying reasons for the termination." (*Id*. at 32.) Judge Mann reasoned that the references by Rosen to Howell's legitimate reasons are contained only in the Supplemental Production where counsel specifically stated that they were not waiving any attorney-client privilege. (*Id*. at 31–32.) Judge Mann therefore denied Plaintiff's motion to compel the production of additional emails. (*Id*. at 32.)

Plaintiff argues that because the Supplemental Production was voluntary, and because Riri SA made the Supplemental Production to resolve a discovery dispute, the Supplemental Production triggered the same waiver as an affirmative disclosure intended to be used as a defense to Plaintiff's claims. (Pl. Appeal 9.) Contrary to Plaintiff's assertion, the "specific context in which the privilege is asserted" directly informs the fairness analysis at issue in determining the presence and scope of an implicit waiver. *In re Grand Jury Proceedings*, 219 F.3d 175 at 183.

In contrast to the affirmative decision to "inject . . . into the litigation" the documents in the Initial Production, *In re Sims*, 534 F.3d at 132, Riri SA made the Supplemental Production in response to Plaintiff's demand and "in connection with a motion to compel," with the express intention not to broaden the subject matter waiver and "to moot the issue" of Plaintiff's demand for communications within the scope of the waiver triggered by the Initial Production. (Sept. 21 Tr. 31.) Riri SA produced the Supplemental Production as a response to Plaintiff's request, rather than as a proactive attempt to inject the communication into the litigation. Moreover, while the Initial Production was made in an attempt to prove a defense in the case — that the decision to terminate Plaintiff was made before Howell learned of her pregnancy — the

15

Supplemental Production was not part of this attempt. *See In re Cty. of Erie*, 546 F.3d at 229. Rather, the Supplemental Production was made in response to Plaintiff's general request for communications on Plaintiff's termination, and therefore, the disclosure does not give rise to the same fairness concerns as with an attempt by Riri SA to prove a defense, while shielding related materials that Plaintiff could use to contest the assertion.[9] Indeed, Riri SA has provided Plaintiff with all communications on the subject of the waiver, as well as all communications on the subject of Plaintiff's termination, and Plaintiff has identified no prejudice from the disclosures. These considerations all weigh against finding a broader implicit waiver, and Plaintiff has not identified factors relevant to the fairness considerations that would favor such a waiver.

Based on all the evidence, the Court finds that Judge Mann correctly determined the scope of the subject matter waiver that arose from both the Initial and Supplemental Productions. Plaintiff has failed to show that Judge Mann's determination as to the scope of the subject matter waiver was clearly erroneous or contrary to law. Because Riri SA states it has already provided all emails on the topic of the timing of Plaintiff's termination, the Court finds that Judge Mann did not err in denying Plaintiff's motion to compel the production of additional emails.[10]

---

[9] In addition, Riri SA has not placed information from a privileged communication before a factfinder; the Supplemental Production was made in the context of discovery, not as "an assertion of fact to influence the decisionmaker." *In re Cty. of Erie*, 546 F.3d at 229. This consideration further weighs against a finding of prejudice or unfairness to Plaintiff.

[10] Plaintiff also renews her specific request for the "documentation" of the timing of Plaintiff's termination and the "Lori specifics" both referenced by Howell in the December 14, 2009 Email, contained in the Initial Production. (Pl. Appeal 18.) It appears that these documents have already been produced in the Supplemental Production. Plaintiff's counsel acknowledged before Judge Mann that the December 9, 2014 Email contained the "Lori Specifics," the employment history facts Howell sent to Rosen to include in the separation agreement, despite later reiterating the request in this appeal. (Sept. 21 Tr. 6.) As to the "documentation" of the timing of Plaintiff's termination, the December 14, 2009 Email explains that the emails between Rosen and Howell prior to his stating he has learned of Plaintiff's pregnancy are the

### c. Deposition of Defendants' counsel

Plaintiff argues that Judge Mann's denial of her application to depose Rosen was contrary to law because Judge Mann failed to consider factors identified by the Second Circuit as relevant to an application to depose counsel, and instead based her decision on the fact that "depositions of counsel are frowned upon" and "highly discouraged and rarely justified." (Pl. Appeal 10.) Riri SA argues that Judge Mann correctly determined that Plaintiff is not entitled to depose Rosen, despite the uncontested fact that Rosen, as Riri USA's attorney, "discussed Plaintiff's termination with Mr. Howell," because that topic is outside the scope of the attorney-client waiver. (Defs. Appeal Opp'n 8.) Riri SA argues that Judge Mann's reference to attorney depositions being "discouraged" was not a misstatement of law, and that her analysis considered the appropriate factors under the law of this Circuit. (*Id*. at 8–9.)

"[D]epositions of opposing counsel are disfavored" in this Circuit, although "the disfavor with which the practice of seeking discovery from adversary counsel is regarded is not a talisman for the resolution of all controversies of this nature." *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 71 (2d Cir. 2003) (internal quotation marks and citations omitted). The Second Circuit has explained that in making this determination, courts must look at "all of the relevant facts and circumstances" in order to "determine whether the proposed deposition would entail an inappropriate burden or hardship." *Friedman*, 350 F.3d at 72. Factors to consider include:

> [T]he need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted. These factors may, in some circumstances, be especially appropriate

---

"documentation" of the timing. (Pl. Disc. Mot. 7.) To the extent Plaintiff also seeks the draft separation agreement, as discussed before Judge Mann, Riri SA has represented that it has produced all drafts of the separation agreement that it was able to locate. (Sept. 21 Tr. 7.)

17

> to consider in determining whether interrogatories should be used at least initially and sometimes in lieu of a deposition. Under this approach, the fact that the proposed deponent is a lawyer does not automatically insulate him or her from a deposition nor automatically require prior resort to alternative discovery devices, but it is a circumstance to be considered.

*Id*.

Plaintiff argues that Judge Mann's decision was contrary to law because she failed to expressly consider the factors outlined in *Friedman* and, to the extent she did consider these factors, she misapplied them. (Pl. Appeal 11–17.) With respect to the need to depose Rosen, Plaintiff reiterates that she seeks to inquire as to Rosen's knowledge of any response to his inquiries in the Rosen December 14, 2009 Email regarding Howell's "legitimate reasons" for terminating Plaintiff. (*Id*. at 13.) Judge Mann found that Plaintiff failed to show that there was a "need to depose" Rosen as Plaintiff failed to "make any showing . . . as to what the need was." (*Id*. at 17, 31.) Judge Mann further explained that there appeared to be no necessity to depose Rosen because Plaintiff expressly seeks to question him regarding Howell's reasons for terminating Plaintiff, which is outside the waiver that Judge Mann determined is "limited to the timing of when Mr. Howell decided to terminate [P]laintiff." (*Id*. at 32.) Thus, Judge Mann stated that she would "not allow" a deposition "so that that issue can be explored." (*Id*.)

It was not contrary to law for Judge Mann to deny the request based on the strength of her determination that Plaintiff failed to meet her burden to show a need to depose Rosen. The absence of a demonstrated need to conduct the deposition of an attorney can outweigh even a strong showing of the other factors, particularly given that Plaintiff expressly seeks to depose counsel as to a privileged topic. *See, e.g.*, *Sea Tow Int'l, Inc. v. Pontin*, 246 F.R.D. 421, 428 (E.D.N.Y. 2007) ("Allowing defendants to depose [the attorney] would impose a substantial burden on plaintiff and would serve little purpose, other than to disrupt and prolong this

litigation, when fact discovery is nearly closed."). As Judge Mann determined, a line of inquiry outside the waiver of attorney-client privilege cannot provide the "need" for Plaintiff's requested deposition of Rosen.

Based on all the evidence, the Court finds that, given the clear weight of the first *Friedman* factor, Judge Mann did not base her determinations on erroneous findings and made no determinations contrary to law in denying Plaintiff's motion to compel a deposition of Rosen. Plaintiff has failed to show that Judge Mann's denial of Plaintiff's request to depose Rosen in the September 21, 2015 Order was clearly erroneous or contrary to law.

### III. Conclusion

For the foregoing reasons, the Court affirms Judge Mann's September 21, 2015 Order.

SO ORDERED:

    s/ MKB
MARGO K. BRODIE
United States District Judge

Dated: December 22, 2015
       Brooklyn, New York